MAUD McCAIN, RESPONDENT, v. TRENTON GAS & ELECTRIC CO. ET AL., APPELLANTS.*

Kansas City Court of Appeals.   March 4, 1929.

*Corpus Juris-Cyc References: Electricity, 20CJ, section 67, p. 389, n. 72; p. 391, n. 78; section 68, p. 392, n. 92; Evidence, 22CJ. section 743, p. 650, n. 1; 23CJ, section 1792, p. 48, n. 44; Negligence, 45CJ, section 478, p. 901, n. 27; Trial, 38Cyc, p. 1516, n. 57; p. 1532, n. 24; p. 1543, n. 68.

*Hubbell Brothers* for respondent.

*McCune, Caldwell & Downing* for appellant.

ARNOLD, J.—This is an action in damages to recover for the death of plaintiff's husband, caused by the alleged negligence of defendants.

Defendant Trenton Gas & Electric Company, a corporation located at Trenton in Grundy county, Missouri, operates a plant for the generation of electricity for commercial purposes and in connection therewith an electric transmission line, in furnishing electricity to the towns of Spickard, Blythedale, Eagleville and other towns and cities in Missouri. At these towns are distributing systems to which the said defendant furnishes electric current for distribution, the current being stepped down by the distributing company to proper voltage for use in the various communities.

The Missouri Electric, Gas & Water Company, at the time in question, owned and operated local distributing systems in Cainsville, Eagleville, and other towns in that vicinity. At the time of his death and for two years prior thereto, decedent William C. McCain was employed as a lineman by the Missouri Electric, Gas & Water Company. At the time in question defendant Trenton Gas & Electric Company had almost completed an extension of its transmission line which would conduct electricity from Blythedale to Eagleville. It owned the transmission line, poles, wires, etc., constituting the same, as well as the pole upon which the accident is alleged to have occurred. The transmission line consisted of three wires, when completed, but at the time of the accident only two of the wires had been strung all the way to Eagleville, the delay being due to lack of wire.

At the time of the accident McCain was engaged in stringing the third wire into Eagleville, the Trenton Gas & Electric Company having made arrangements with his employer for doing such work. It appears that on the day preceding the accident, decedent had been engaged in stringing the wire referred to on the poles composing the system, and in doing so, had worked while electricity was present in the two wires which had already been strung. His work consisted in tying a rope or cord to the wire and thus drawing it over a cross-arm of the poles and there fastening it. The evidence shows that on the morning of the accident, one Stearns, who was business manager of the Missouri Gas, Electric & Water Company in Cains-

ville, had cautioned McCain that it was not safe for him to work on the transmission line with the current in the wires and told him the current should be shut off; that decedent had said he would cut the current off before working that day and inquired where he could find the "hot stick," meaning a stick or pole upon the end of which is a hook designed to be used in pulling the switches to cut out the current from the wires running beyond the pole upon which they were attached.

At about twelve o'clock, noon, on January 20, 1926, at Blythedale in Harrison county, Missouri, while engaged in stringing said third wire on what is designated in the record as a corner pole, decedent, from some cause, the exact nature of which is in controversy, was either thrown from, or fell from said pole, fracturing his skull, from which he died in a few hours. This suit was instituted by his widow to recover for his death.

For an understanding of the facts, a description of the corner pole upon which decedent was at work when the accident occurred is deemed proper. First, it is called a "corner pole" because it was used at a right angle turn in the direction of the sets of wires attached thereto, one set coming from the east and the other stretching to the north. The bottom of said pole is three feet in circumference, gradually diminishing to a smaller circumference toward the top thereof, its total height being approximately from twenty-five to thirty feet above the surface of the ground. The pole was solidly set in the ground some feet and in part sustained by guy wires, thus causing the pole to lean slightly to the southwest. Three wires approach the said corner pole from the east and are "dead ended" into the east side thereof by the use of porcelain discs. The top one of these wires is about eight inches below the top of the pole, the second or middle one, three and a half feet below the top one and the third three and a half feet below that. In connection with these wires, each has a corresponding switch attached to the northeast face of the pole and just a little lower than the dead end attachment of the wires and in a perpendicular line, one above the other. These switches are one foot in length and from the wires from the east and from the "dead end" a wire jumper runs to the top of its corresponding switch. There are three north wires which are also dead ended into the north side of the pole, their height and distance from each other being the same as the east wires, and from each of the north wires a jumper wire runs to the bottom of its corresponding switch. From the lower jumper of the lower switch to the top of this highest switch is a total distance of eight and one-third feet. The switches thus attached to the northeast segment, or face, of the pole are just half way between the points where the east wire and the north wires are "dead-ended." In the lower wire running north and in the

jumper of that wire there was no current except 2000 volts in the top part thereof, at the time in question, and the bottom switch was open. In all the other wires and in all other jumpers and switches, there were 6600 volts, when decedent went to open the switch blades with the "hot stick."

A switch is described as being a mechanical contrivance consisting of a blade which fits firmly into a socket and is attached to the pole in an upright position. The said switches are a few inches in length and are set upon a porcelain base. When the blades of all three switches are open there yet remains a high voltage in all three of the east wires, in all the top jumpers and the top part of each switch. The purpose of the three switches is to remove the current from the northward running wires by pulling the blades from the sockets of all three switches.

It appears that in pulling the switches the operator must climb the pole and with the hook of the "hot stick" pull down at an angle from the face of the pole—the blades opening outward. At the time of the accident, it appears the lower switch previously had been opened and decedent had pulled only the middle switch—the top switch being still closed. This left 6600 volts in the east wires and in all the top jumpers and top of the switches, and 6600 volts in the top wire running north and in the lower jumper of that wire. In pulling the middle switch over there were left 2000 volts in the lower jumper of the middle wire running north.

It is in evidence that McCain adjusted his climbers and with the "hot stick" in his hand, had climbed the pole in question; at least, when first seen on the pole, he was reaching with the hot stick with his head among the wires. There was no eyewitness as to just what happened to cause the accident, but he was soon found lying on the frozen ground, his body about eight feet from the base of the pole, and with his skull fractured.

The petition alleges defendants were negligent in the following respects: (1) In the negligent construction of the corner pole, because such construction required a workman, in removing the current from the wires, to pass in unnecessary and unreasonable proximity to the said dangerous wires, jumpers and switches; that such danger easily could have been obviated by installing the switches on a cross arm on another pole, adjacent thereto; (2) that defendants negligently failed to slope the top of said corner pole but left said corner pole flat, thus permitting said pole to become water-soaked and a conductor of electricity and a "ground" to one working thereon; (3) that defendants negligently failed to provide another workman to be on the earth below to warn, advise and inform decedent regarding the method of avoiding injury from said voltage; (4) that defendants negligently failed to properly construct said corner pole

and its equipment and negligently failed to advise decedent as to the proper method of constructing such corner pole; in negligently ordering decedent to cut out the current from said wires by climbing said pole and operating said switches with a ''hot stick;'' (5) that defendants negligently failed to warn and instruct decedent with reference to the dangers of working on and around poles and wires thus constructed; (6) that defendants' said corner pole was not a reasonably safe place to work; and (7) that defendants negligently ordered decedent to do said work without first removing the current from the east wires by means of said sub-station switch.

The amended answer is, first, a general denial, and for affirmative defenses, pleads assumption of risk and contributory negligence in that decedent failed to take the precautions which were available to him and which would have rendered his work safe and prevented his injury; that decedent chose a way to perform the work at hand which was not as safe as another available way; that he negligently failed to do the work in the safest way; that he was negligently using defective tools and appliances of his own, the same being unsafe and dangerous for the purpose used; that, if decedent did come in contact with a charged wire and receive a shock, he did so as a result of his own negligence in failing to keep himself clear of the wires, switches and appliances on said pole and in failing to have his safety belt securely fastened about said pole, and in failing to see that his said belt was securely fastened in position to prevent his falling from said pole. The answer further alleges that each and all of said acts, operating jointly and severally, caused and contributed to the injury and death of said William McCain.

The reply was a general denial. Upon the pleadings thus made the cause went to trial to a jury, resulting in a verdict for plaintiff in the sum of $5000 against both defendants and judgment was entered accordingly. Motions for new trial and in arrest of judgment offered by both defendants were overruled and both have appealed.

At the close of plaintiff's evidence and again at the close of all the evidence, defendants each asked an instruction in the nature of a demurrer. Both were refused and defendants attack this ruling of the court as error and urge the case should not have been submitted to the jury. This is the only error charged. It is insisted (1) that the evidence wholly fails to show that defendants or either of them was guilty of negligence; (2) that the evidence wholly fails to show that the negligence pleaded and proved (if any) was the proximate cause of the injury; that under the evidence the accident might have happened from two or more causes, for only one of which defendants would be liable; that plaintiff failed to prove the injury arose from any cause for which defendants would be liable; and (3) that plain-

tiff's evidence affirmatively shows that decedent was guilty of contributory negligence barring recovery in this action.

In passing upon demurrers the testimony of the plaintiff must be considered as true and plaintiff is entitled to all reasonable inferences in his favor to be drawn from defendant's testimony. First we shall consider the charge made by appellants that the evidence wholly fails to show that defendants or either of them was guilty of negligence. One charge of negligence in the petition is the faulty construction of the corner pole in that the wires and switches thereon required a lineman, in operating the switches, to put himself in too close proximity to the wires and switches on the pole; and it is further charged that defendants were negligent because a pole constructed differently and safer, as described and recommended by plaintiff's expert witnesses, was not used by defendants. In considering this question it will be necessary to refer to the construction of the pole, especially as to the wires and other attachments. It is in evidence that the switches were placed one directly above the other and about three and a half feet apart; that the charged wires from the east, at their point of attachment on the east side of the pole were nine inches or less from the point of attachment of the wires running north. the switches being between the two, so that in pulling the switches it was necessary for decedent to place himself between the east and north wires.

Defendants make the point that decedent could have climbed the pole at the southwest segment and thereby had room to pull the switches without placing himself in such dangerous proximity to the wires. But the testimony does not support defendants in this. The evidence shows the pole leaned to the southwest and if McCain had climbed the pole from that side it would have been necessary for him to have reached around the pole in order to pull the switches; thus placing himself in a position from which he could not well have seen the switches, nor could he have operated his "hot stick" therefrom. This was evidence from which the jury might reasonably have inferred that it was not only impractical but more dangerous to climb the pole from the southwest segment than to proceed as he did.

There was expert testimony tending to show that another and less dangerous attachment to the pole could have been used by defendants by which decedent could have climbed the pole and by use of his hot stick have pulled the switches with less danger of coming in contact with the charged wires. Plaintiff's expert witness, C. W. Billings, recommended as safer a pole whereon the switches should be placed horizontally on a cross arm where they could be reached from below with the hot stick, without coming into dangerous proximity with the charged wires. The general rule as to the duty of the mas-

ter to furnish reasonably safe appliances and places for the performance of the work is stated in 39 C. J., sec. 441, p. 308, as follows:

"It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith, and places wherein, to do his work."

This rule is quite universally held to be the law. [Haggard v. Coal Co., 200 S. W. 1072; McGinnis v. Press Brick Co., 261 Mo. 287, 169 S. W. 30; Ganey v. City, 259 Mo. 654, 168 S. W. 619.] Defendants assert that the pole and attachments in question were not shown by plaintiff's evidence to have been negligently constructed and not reasonably safe and therefore, under the rule, defendants are not liable. It is not within the province of this court to pass on the weight of the evidence. That duty clearly belongs to the jury and if there is any substantial evidence in support of the allegations of the petition, it is the duty of the trial court to submit the case to them. Plaintiff's testimony showed the construction of the pole in question and its attachments, the close proximity of the charged wires, switches and jumpers to each other, and the necessary proximity of the body of decedent to them in doing the work he was required to perform; and also suggested the construction of a pole which in the opinion of plaintiff's witnesses was less dangerous. Keeping in mind the rule above enunciated and the evidence of plaintiff's witnesses, we are of the opinion that the court did not err in submitting the question to the jury as to whether or not the pole was reasonably safe.

Defendants argue that the testimony of plaintiff's expert witness was not admissible because the matter was not a proper subject of expert testimony, and that it invaded the province of the jury. In support of this contention defendants cite the following cases: Edwards v. Paving Co., 92 Mo. App. 221, an opinion by this court; Lee v. Knapp, 155 Mo. 610, 56 S. W. 458; Koenig v. Ry. Co., 173 Mo. 698, 73 S. W. 637. In the Edwards case this court held that, in an action to recover damages resulting from the use of an appliance that is free of any complications, expert evidence of its dangerous character is incompetent. Plaintiff's cause of action in that case was based upon the use of a defective wagon bed. In the case of Lee v. Knapp, it was held that an expert witness should not be permitted to express an opinion concerning matters of common knowledge, or of which the jurors are just as capable as he to form an opinion. [See, also, The Koenig case.] The rule in this State is clearly stated in the case of Benjamin v. Railroad, 133 Mo. 274, 288, opinion by Macfarlane, J., as follows:

"It is the province of the jurors to draw all inferences and conclusions from the evidence before them. The witnesses, as a general

rule, must state facts from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an intelligent opinion cannot be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule, and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The exception is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror, and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, from want of experience, or knowledge of the subject, to draw correct conclusions from the facts proved. Expert witnesses are generally selected by the parties from their known opinions on the subject in respect to which they are called to testify, and, therefore, in view of the important functions they perform, their evidence should be admitted with great caution.''

We think the record clearly shows the matter of the proper construction of the pole under controversy for the purpose of carrying the dangerous and, to say the least, not well understood properties of electricity, is a subject sufficiently technical to admit the testimony of experts to aid the jury in understanding the case. We hold the admission of the expert testimony was not error.

It is also urged that the evidence fails to show that the negligence proved, if any, was the proximate cause of the injury. In support of this charge it is urged the accident might have happened from two or more causes for only one of which defendants would be liable, and that plaintiff has failed to prove that the injury arose from the alleged cause for which defendants would be liable. It is insisted there is no direct testimony of record as to what caused decedent to fall and that there is no evidence, direct or circumstantial connecting the position of the wires and switches on the pole with the injury received by decedent. The petition alleges that while changing his position on the pole so as to reach the switches in a more advantageous manner, decedent came into contact with some part of the charged wires, jumpers and switches and was thereby caused to fall. And it is argued that in order to find that decedent came into contact with some part of the charged wires, jumpers or switches upon the pole, owing to the construction thereof and that he was thereby caused to fall, is to build presumption upon presumption. [State ex rel. v. Cox et al., 298 Mo. 427, 250 S. W. 551.] Defendants assert there is no evidence that decedent came in contact with the charged appliances on the pole because of their position or because of anything done by either of the defendants; that, under the evidence, it is just as probable that he fell and in falling touched some wire, jumper, or part of a switch because he lost his footing, owing to a

short gaff on one of his climbers; that he may have lost his balance owing to his failure properly to fasten his safety belt which was found to be unfastened after the accident; or, he may have inadvertently come in contact with one of the wires (citing Egan v. Gas & Elec. Co., 233 S. W. 239), and that plaintiff has failed to establish any causal connection between the position of the wires, jumpers and switches on the pole, and the accident. It is undisputed that no matter how free from negligence an injured person may be, he cannot recover damages for personal injuries because of the negligence of another unless such negligence was the proximate cause of the injury. There can be no recovery in such cases without evidence tending to show the facts of negligence and injury and that a causal connection exists between such facts. [State ex rel. v. Cox et al., 310 Mo. 367, 276 S. W. 869.] But we are not impressed with defendants' position in regard to the evidence.

The evidence shows that decedent had been ordered to open the middle and the top switch; he had already opened the middle switch which was found open after the accident. There could be no presumption in connection with this physical fact. Decedent was seen on the pole with his head among the wires. Hence decedent had opened the middle switch, the jury were warranted in concluding he was engaged in opening the top switch when the accident occurred. The evidence shows that in order to reach the top switch with his eight foot "hot stick" it was necessary (because of the required angle of his body from the pole) for him to readjust his safety belt above the lower switch. This would account for the fact that his safety belt was unfastened when his body was found on the ground.

There is testimony that decedent was working among the wires and that his head was above the second group of wires. There being no eyewitness to the accident, it was necessary for the jury to determine the facts from the surrounding incidents. A burn was found on his right cheek sufficient to have produced an electric shock powerful enough to have thrown him from the pole. The jury were warranted in taking that fact into consideration in arriving at a verdict. Defendants argue the man might have fallen from the pole by reason of a short gaff on his climbers, a fact shown by the evidence. But this theory was met by testimony that there were no splinters torn in the wood of this pole, no gaff marks torn out and no scar in the wood such as usually accompanies a fall of a lineman from a pole. This was a controverted issue of fact for the consideration of the jury. As in the case of Economy L. & P. Co. v. Sheridan, 65 N. E. (Ill.) 1070, 1071, there is no direct proof that the decedent came in contact with the charged wire and that he received an electric shock which threw him from the pole, but from facts and circumstances in evidence, it might reasonably be found by the jury that such contact

was the cause of his death. It is said in Curtis' Law of Electricity, sec. 452, p. 672:

"Where it appeared that a lineman, killed by a shock, may have slipped from the cable or stand on which he was standing, and the shock aided and contributed to his fall, it is a question for the jury whether or not the shock was a concurrent and efficient cause of the fall."

And at p. 933, sec. 618, the same authority states:

"The fact that electricity was the cause of death may, like most other facts, be proved by circumstantial evidence, if there is no direct primary evidence procurable. In civil cases, a litigant is not required to prove his right to recover beyond a reasonable doubt; all that is required is that evidence be produced which indicates with reasonable probability the truth of the party's contention." [See, also, Corby v. Telephone Co., 231 Mo. 417, 428, 132 S. W. 712; Siberell v. Ry. Co., 9 S. W. (2d Ser.) 912.] It is said in Goucan v. Cement Co., 298 S. W. 789:

"It may also be conceded without citation of authority that where there is any evidence to sustain plaintiff's action, it must be submitted to the jury, and every favorable inference of fact must be made in favor of plaintiff in ruling on a demurrer to plaintiff's evidence."

. . . . . .

". . . but where a substantial doubt arises as to whether the damage was the natural and proximate, or a speculative and remote, result of the negligence, the question should be submitted to the jury under proper instructions."

If there is circumstantial evidence upon every issue necessary to a recovery, it is for the jury to determine its weight and probative force. [Steffens v. Fisher, 161 Mo. App. 386, 143 S. W. 1101.] It is not necessary that there be positive proof, that each essential issue be established by direct evidence, but circumstantial evidence may tend to the same and be as cogent and conclusive as direct evidence. We hold there was evidence of a character sufficiently substantial to warrant the court in submitting the issues to the jury.

Finally, it is charged plaintiff's evidence affirmatively shows that deceased was guilty of such contributory negligence as to bar a recovery. In support of this contention, it is pointed out that plaintiff's testimony shows that decedent was facing the pole with his back to the east; and so, with the wires on each side of him and the switches in front of him, he could have maintained a position on the west or southwest side of the pole and thus have been free from danger. The facts shown in the evidence are that the wires joined the pole from the east and north, thus placing decedent with his back to the northeast and his face toward the switches; therefore he

had only a quarter the circumference of the pole between the north and east wires for his work in pulling the switches. It is true that if he could have placed his body on the three-quarter circumference of the pole on its southwest side, he would have had more space. However, as heretofore stated, in that event he would have been compelled to reach around the pole with the "hot stick" to have pulled the switches. Under the evidence the jury were warranted in finding it would have been almost if not quite impossible for him to do this, considering the fact, in evidence that decedent was not an electrician, but a lineman. We hold therefore that the question of decedent's contributory negligence was one of fact for the jury. We cannot say he was guilty of contributory negligence as a matter of law. The trial court did not err in submitting the case to the jury. The judgment is affirmed.

*Bland, J.,* concurs; *Trimble, P. J.,* absent.