Geraldine CHESTER, Appellant,

v.

Clarence B. SHOCKLEY, Respondent.

No. 45628.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1957.

Blackford, Imes, Compton & Brown, J. William Blackford, Haskell Imes, Kansas City, for appellant.

Robert F. Sevier, Liberty, William H. Hoffstot, Jr., John R. Gibson, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, for respondent.

HOLMAN, Commissioner.

Action to recover damages in the sum of $15,000 for personal injuries sustained by plaintiff, Geraldine Chester, when the car she was driving was caused to overturn as a result of being struck by defendant's automobile. The jury returned a verdict for defendant. From the ensuing judgment plaintiff has duly appealed.

The collision occurred about noon on April 4, 1955, in Kansas City North, Clay County, Missouri, at a point near the intersection of U. S. Highway 69 (known also at that point as Highway 169 and as Oak Street Trafficway) and 32nd Street. The highway at that intersection runs generally north and south and is 40 feet wide with two 10-foot lanes for traffic in each direction. Thirty-Second Street does not run squarely east and west but more nearly northeast by southwest. However, there is a short section of pavement, about 45 feet wide, which curves from the north side of 32nd Street (about 90 feet east of the highway)

in a northwesterly direction to the highway and which is known as 32nd Street cutoff. Defendant's northbound Buick struck plaintiff's southbound Ford near the right rear wheel thereof as plaintiff sought to make a left turn across the northbound lanes in order to enter 32nd Street cutoff.

Plaintiff testified that before beginning the left turn she slowed her car to not more than ten m.p.h. and just as she started to turn, saw defendant's car coming around the curve, which was from 350 to 400 feet away. She proceeded across (angling southeast) and when about the center of the northbound lanes, looked south again and saw defendant's car about 115 feet away, coming at an estimated speed of 60 or 70 m.p.h. She gave her car more gas in an effort to get across but, according to plaintiff, the defendant's car struck the right rear fender of her car after most of it had entered the south half of the cutoff with perhaps the rear five feet extending into the highway. The force of the impact caused plaintiff's car to whirl around and turn upside down.

Defendant testified that he was driving in the outside (east) lane for northbound traffic when he noticed the plaintiff's car starting a left turn across the east side of the highway. He estimated that at that time he was 70 feet away from the Ford and going from 40 to 45 m.p.h., while plaintiff was traveling at 20 m.p.h. Defendant stated that he sounded his horn, applied the brakes and tried to swerve to the left, but was unable to avoid the collision. He stated further that his car skidded for 50 feet and reduced its speed to 10 or 15 m.p.h. before the impact which he says occurred 20 feet north of the north curb of the cutoff and eight feet west of the east edge of the highway; that at 45 m.p.h. he could stop his car in 165 feet. In many respects the testimony of defendant was corroborated by that of his wife who was in the car with him.

The testimony of two eyewitnesses was offered by defendant. Leonard Tigner stated that he had stopped his car at the stop sign on the 32nd Street cutoff preparatory to entering the highway; that he looked to the left and saw the Buick approaching and about that time the defendant sounded his horn and applied his brakes and the witness then looked to the right and saw the Ford angling across toward the cutoff; that the point of impact was 20 or 25 feet north of the north curb of the cutoff and eight feet in from the east edge of the highway. He further stated on cross-examination that when he first saw the cars they were about "three car lengths or a little more" apart, but he also placed the Buick at a specific point which, according to a plat in evidence, would indicate that it was then a little over 100 feet from the point where he says the impact occurred.

The other eyewitness, Monty Fontana, testified by deposition that he was sitting on a suitcase on the east shoulder of the highway about 20 feet north of the cutoff, seeking to obtain a ride to Des Moines. He stated that he heard the horn of defendant's car when it was 50 feet to his left (south); that the Buick was "going about around 35, anyway," and that the driver of the Ford, which was making a left-hand turn, was "doing around 20, anyway"; that the point of impact was "almost directly in front of me," practically at the center of the northbound traffic lanes.

Upon this appeal plaintiff contends that the trial court erred in giving certain instructions at the request of defendant. She also makes a most vigorous contention that the court erred in permitting Willard L. Shaffer, a Kansas City police officer who investigated the accident, to testify as to the point of impact, basing his opinion upon his findings of skid marks, location of debris, etc. on the highway. We will consider that point first, and in so doing will relate portions of the testimony of that officer.

Officer Shaffer, the first witness plaintiff offered in the trial, testified that on

April 4, 1955, he was assigned to the accident investigation unit and investigated the instant accident. He took photographs of the cars and of the highway involved and these were admitted in evidence upon being offered by plaintiff. Shaffer also stated that the marks on the highway indicated that defendant's car skidded 50 feet and proceeded 20 feet farther before coming to rest 43 feet north of the north curb of 32nd Street cutoff. Upon cross-examination by defendant's counsel, he related that he found dirt on the highway and a change in the line of travel of defendant's car at a point 23 feet north of the north curb of the cutoff and 8 feet west of the east curb of the highway. He stated that by considering the location of the dirt, the point where the skid marks ended, and the change in the line of travel, he had determined what he thought was the point of impact. When the officer was asked to give that point, plaintiff's counsel objected upon the ground that such would call for a conclusion and invade the province of the jury to determine that fact. The objection was overruled. The answer given and the next question and answer were: "A. The place in the roadway that I found the dirt and the change in the line of travel of the skid was 23 feet north of the north curb line of the 32nd Street cutoff. Q. And where was it with respect to the east line, east curb of 69 Highway? A. Eight feet west of the east curb line of 169 Highway." It will be seen that the answer was not responsive and contained factual information which would have been proper if given in response to a proper question. However, a little later in the examination, the witness was asked to place an X on a picture in evidence to indicate the point that he had determined to be the point of impact. Plaintiff's attorney again objected on the ground that it called for a conclusion and, upon such being overruled, obtained the court's consent to an understanding that the same objection would apply to all other similar questions. Thereafter, the witness marked the photograph accordingly and was examined at some length by defendant's counsel in regard to the place he determined to be the point of impact (23 feet north of the north curb of the cutoff and 8 feet west of the east curb of the highway) and his method of reaching that conclusion.

We think it clear that the trial court erred in overruling the objections heretofore noted and in permitting the officer, who was not an eyewitness, to give his opinion or conclusion, from the facts learned in his investigation, as to the point of impact. In the case of Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, a highway patrolman who investigated the accident was permitted by the trial court, over objection, to state his opinion, based upon the location of debris that had fallen from the vehicles involved, as to the point of impact. Upon appeal this court held that such was not a proper subject for expert or opinion evidence, and hence the ruling which permitted the witness to give the challenged opinion was error. This court has adhered to that view since the adoption of the Hamre opinion. Pulse v. Jones, Mo.Sup., 218 S.W.2d 553; Cox v. Wrinkle, Mo. Sup., 267 S.W.2d 648; Welch v. McNelly, Mo.Sup., 269 S.W.2d 871; Ryan v. Campbell "66" Express, Inc., Mo., 304 S.W.2d 825.

Defendant in his brief has advanced a number of reasons why the foregoing testimony may be said not to be prejudicial and hence should not require a reversal. The first such contention is that plaintiff first brought out the point of impact upon the direct examination of Officer Shaffer and further questioned the officer in regard thereto upon redirect examination. We find no merit in that contention. The testimony defendant relies on in relation to the direct examination is as follows: "Q. (By Mr. Blackford) Officer, now I hand you plaintiff's Exhibit '4' [and] ask you if you can identify it? A. That is a picture taken by myself in a northerly direction; shows the roadway at the point of impact, and that was taken for the purpose

of showing the skid laid down by the No. 1 automobile." The picture referred to shows several hundred feet of the highway and includes the general area where it is conceded the collision occurred, but there was nothing in the answer of the witness to indicate the precise point of impact.

■ After the defendant had completed his cross-examination of the officer, plaintiff's attorney, on redirect examination, was permitted (without objection as to the form of the questions), in effect, to cross-examine the witness in an effort to diminish the force and effect of the evidence in regard to the point of impact, which had been erroneously admitted. It is well established in this state that such examination would neither waive nor cure the error in the admission of that evidence. Levin v. Hilliard, Mo.Sup., 266 S.W.2d 573.

■■ Defendant next contends that any error in the ruling which permitted the witness to mark on a photograph the point which he had concluded was the point of impact was not preserved for review because no objection had been made to the immediately preceding question, in response to which the officer had indicated a place on the photograph which he had determined was the point of impact. That contention overlooks the fact that there had been a previous objection to similar testimony that had been overruled. It is well settled that where a timely and sufficient objection has been squarely made, it is not necessary to follow up with repeated objections in order to preserve the point. Taylor v. Kansas City Southern Ry. Co., Mo.Sup., 293 S.W.2d 894; Wooten v. Friedberg, 355 Mo. 756, 198 S.W.2d 1. In the instant case the issue was explicitly presented to the trial court in the first instance, and, the objection being overruled, it was not necessary for plaintiff to thereafter repeat the objection each time defendant sought to elicit like testimony, in order to save the matter for our review.

■ The last contention of defendant in regard to the point under consideration is that the admission of that testimony could not have been prejudicial because it was merely cumulative of other evidence which was properly admitted without objection. In support of that position it is said that the defendant, and two disinterested eye-witnesses offered by him, testified that the point of impact was at substantially the same place as had been fixed by Officer Shaffer as a result of his investigation. We recognize that the courts, under the circumstances presented in various situations, have frequently held that the erroneous admission of cumulative testimony was not prejudicial. However, for reasons which will be hereafter indicated, we have concluded that the admission of the evidence in question was prejudicial.

In the final analysis, the determination of the existence of prejudice depends largely upon the facts and circumstances of the particular case. The question would seem to be whether the erroneously admitted evidence was such as had any reasonable tendency to influence the verdict of the jury. In the instant case there are a number of factors tending to indicate that plaintiff was prejudiced by the admission of the testimony under consideration.

It should first be noted that the witness who was permitted to give the improper opinion was an impartial officer who was trained and experienced as an investigator. It is not unreasonable to assume that the jury would likely give considerable weight to the testimony and opinion of such a witness. Consideration should also be given to the fact that Shaffer was the first witness to testify. The jury was forming its first impressions as to the facts. The evidence erroneously admitted was not only given to the jury at the very beginning of the trial, but the opinion of the officer was thereafter referred to by counsel for defendant in examining and cross-examining witnesses subsequently called.

■ In this connection it should not be overlooked that Officer Shaffer was placed on the stand by plaintiff who thereby vouch-

ed for his credibility. In so doing she had a right to assume that he would not be permitted to give improper testimony. It would seem to be particularly harmful to plaintiff's cause for the investigating officer (her witness) to be erroneously permitted to give testimony that was in direct conflict with her personal testimony which was to follow shortly thereafter. It should also be noted that no other witness for plaintiff testified as to the point of impact and that the erroneously admitted opinion of Officer Shaffer not only contradicted plaintiff's personal testimony on that question, but corroborated the testimony of defendant thereon.

Plaintiff's case was submitted upon the humanitarian negligence of defendant in failing to stop, slacken, or swerve his automobile. The question as to the point of impact was material to the issues. The testimony that said point was eight feet west of the east curb of the highway was particularly damaging to plaintiff on the issue of failure to swerve. All of the evidence was that defendant, before seeing plaintiff's car, was driving in the east lane for northbound traffic. Plaintiff's testimony as to the point of impact would authorize the jury to reasonably find that it occurred while the right side of defendant's car was almost at the east edge of the highway, which would necessarily indicate that defendant had not swerved to any appreciable degree. The erroneously admitted evidence of Officer Shaffer would reasonably authorize a finding that the impact occurred when the right front of defendant's car was eight feet west of the east curb, which would indicate that defendant had swerved his automobile to a very substantial degree in seeking to avoid the collision.

For the various reasons heretofore discussed, we have the view, as stated, that the admission of the instant evidence constituted prejudicial error, notwithstanding the fact that other witnesses offered by defendant testified to substantially the same point of impact.

We deem it unnecessary to extend this opinion by a discussion of the alleged errors in regard to the giving of instructions requested by defendant. Since the case must be retried, counsel for defendant, and the trial court, will have the opportunity to re-examine those instructions, and make such corrections as may be considered necessary, in view of the attack made thereon by plaintiff.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.