Erma Sue SCHNEIDER, Respondent,

v.

Paul Allen PRENTZLER, Administrator of the Estate of Kenneth Lee Prentzler, Deceased, Appellant.

No. 50846.

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Terence C. Porter, Columbia, Darold W. Jenkins, Marshall, Welliver, Porter & Cleaveland, Columbia, of counsel, for respondent.

W. F. Daniels, Fayette, for defendant-appellant.

PRITCHARD, Commissioner.

This is a circumstantial evidence case of collision between a westbound dump truck driven by plaintiff's deceased husband and an eastbound pickup truck driven by defendant's intestate upon Highway 5 in Howard County, Missouri. The question is whether there was a sufficiency of such evidence to justify a finding that defendant's intestate was upon his wrong side of the road and thus proximately caused the death of plaintiff's husband. Both drivers died as a result of the collision. The wife of defendant's intestate (Kenneth Lee Prentzler) was a passenger in the pickup truck and survived, and was the sole eyewitness to the collision.

The case was removed upon change of venue to Saline County from Chariton County (the residence of the parties), and was tried to a jury which returned a verdict for $25,000 for the wrongful death of plaintiff's husband. From the ensuing judgment, defendant appeals.

On July 2, 1962, plaintiff's deceased husband, Jacob K. Schneider, was employed in hauling sand from Glasgow, Missouri, to an asphalt mixing plant near Roanoke, Missouri, a one-way distance of about 20 miles.

He was driving a 1959 International truck with tandem rear wheels. It had a dump body on it 7½ feet wide and 11 feet long. The rear wheels of the truck were about 7½ feet wide. The truck was empty and weighed about 12,500 pounds.

About two miles east of Glasgow, where the collision occurred, Highway 5 is a rock asphalt pavement. Dividing the pavement in its center is a broken white line. The pavement at that point is about 20 feet wide. The collision took place on a fairly straight east-west stretch of this winding highway. From the scene of collision the nearest curve is about 400 feet to the east, and from the east curve the roadway slopes downward to the west.

Howard Lee Munden, who was in the same employment as plaintiff's decedent, came upon the scene of the collision shortly after it happened—within 10 or 15 minutes. He saw the dump truck on the north side of the road, down the road some way from the Prentzler pickup, and facing south with the front end on the edge of the highway and the back end off in the ditch. The Prentzler pickup was back to the east on the south side (the eastbound lane) of the highway, with the front end sitting right on the center line. Munden observed debris and material that had fallen off the vehicles, consisting of dirt and glass (3 or 4 feet across), some 3 or 4 feet north of the center line, and approximately due north of the Prentzler vehicle. There was also a fresh gouge mark 3 or 4 feet north of the center line and right near the center of the area of debris, "shakedown" and broken glass. The area of the heaviest concentration of debris and the location of the gouge mark therein were marked with a circle and a dot by the witness on plaintiff's Exhibit 13 (a photograph of the roadway), as was the location of the front of the Prentzler vehicle on the center line. Munden looked for shakedown or debris on the south side of the center line and on the shoulder, but did not see any. Upon the north bank he observed where the dirt had been torn up in two places, a few feet apart. He observed also some truck parts on the north side of the highway, but none on the south.

John Schnetzler was also employed in hauling sand as was plaintiff's decedent on July 2, 1962. He went out to the scene of the collision forty-five minutes to an hour after it happened. The only vehicle remaining there was the truck Schneider was driving which was located on the north side with its tandem rear wheels over a culvert and its front on the north edge of the blacktop. Schnetzler found the seat, windshield and things which had been thrown out of the truck on the north shoulder. He saw a gouge mark on the north side of the center line about 3½ to 4 feet north thereof and in the westbound lane. He also saw debris or shakedown—dirt, oil, antifreeze or water, in the area of the gouge mark. He observed no tire marks east of that point. He walked along the south side of the shoulder and did not find parts of the trucks thereon.

Leo Maag was the employer of plaintiff's decedent. He testified that the width of the 1959 International truck was 7½ feet at its widest part (the bottom of the bed); the width of the 1952 Chevrolet pickup truck (the Prentzler vehicle) was 70 inches, its length 15 feet and 9 inches. The dump truck was equipped with a governor which limited its speed to 60 miles per hour, and the governor was in good working order on the day of the collision. Mr. Maag went to the scene of the collision about 45 minutes after it happened. His truck was still there, but the Prentzler pickup was being towed to Glasgow. He made an examination of the highway and observed the heaviest part of debris and shakedown where the vehicles collided on the north side of the center line. He saw dirt, oil, water and glass at that point. There was some debris on the south side of the highway but the majority of it was on the north side of the center line.

Larry Hannah, an engineer, made a survey of about 600 feet of Highway 5 at the scene and drew a plat thereof to scale. From a point marked "I", 4 feet north of the center line, he put in a distance of 202 feet west to a sign, and just to the west of the sign he indicated a culvert, all on the north side of the highway. He also put in a distance from point "I" to the east 405 feet to the top of the rise on the highway. The foregoing data (including Point "I") was placed on the plat by Mr. Hannah at the trial.

C. M. Price, Sergeant with the Missouri Highway Patrol, testified that he received a radio notice of the collision at 2:30 p. m. on July 2, 1962. He thereupon went to the scene and made an investigation of the collision. On the day thereof the weather was clear and the road was dry. When Sergeant Price arrived at the scene there was a pickup truck in the south lane, and a large dump truck farther west on the shoulder. Neither vehicle had been moved. The right front corner of the pickup truck was right at the center line of the highway. There was debris in the over-all general area; the bulk of it, or the center of the bulk, was located in the north lane, which was 4 feet north of the center line, and about 12 feet from the right front corner of the pickup. The center of the heaviest area of the shakedown and debris was located 202 feet from the dump truck. The width of the shoulders of the road on either side of the heaviest concentration of debris was: north shoulder, 8 feet; south shoulder, 10 feet. The width of the pavement at that point was 20 feet. Sergeant Price drew on the plat the positions of the two vehicles as he found them. He drew a circle on the plat where he found the heaviest concentration of debris and shakedown, around what had been marked "Point I" by engineer Hannah. From the right front wheel of the pickup truck he saw a tire mark, 12 feet in length, which went to the west and back into the north lane of traffic about ½ foot. There was also a tire mark 10 feet long leading back to the west from

the right rear wheel of the pickup truck and from the south edge of the pavement. He saw "hash marks" 20 feet west of the point of collision on the north bank or back slope of the road where the dump truck had struck first with its rear wheels, and from the number of them it was his judgment that the dump truck had rolled over twice —two full turns. From the damage to the vehicles Sergeant Price determined that the left front of the pickup and the left side of the dump truck right at the door, the left corner of the bed and the rear wheels, came together in the impact. The dump truck rolled right side first and continued to roll, so that the nose was pointed south toward the pavement as it was rolling on down (towards where it came to rest).

Because the submissibility of plaintiff's case is being challenged, we have set forth the foregoing facts in their light most favorable to her, and we have disregarded defendant's evidence. Goddard v. St. Joseph Light and Power Company, Mo., 379 S.W.2d 565 [1]; Kuehn v. Hahn, Mo., 380 S.W.2d 445, 447 [1]. The wife of defendant's intestate, Nancy Prentzler, testified that she was riding with her husband, Kenneth Prentzler, at the time of the collision, and that the pickup truck was on its own (south) side of the road, but that the dump truck was on its wrong (also south) side of the road about halfway. The driver of the dump truck tried to get back on his own side, but did not make it. Although Mrs. Prentzler was the sole eyewitness, the jury was not bound by her testimony, but could accept the above set forth circumstantial evidence relating to the issue of whether defendant's intestate was on the wrong side of the road. Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, 83 [5]. "A well connected train of circumstances is as cogent of the existence of a fact as any array of direct evidence, and may outweigh opposing direct testimony." 32A C.J.S. Evidence § 1039, p. 751; McCain v. Trenton Gas & Electric Co., 222 Mo.App. 1146, 15 S.W.2d 970, 975 [7, 8]. It is well established that a case may be proved by

circumstantial evidence alone. Brawley v. Esterly, Mo., 267 S.W.2d 655, 659 [3–5]; Berry v. Harmon, Mo., 323 S.W.2d 691, 695 [2].

■ There are several circumstances in evidence in this case from all of which the jury could properly and logically infer that the Prentzler pickup was on the wrong side of the road. The first is that the heaviest concentration of debris and "shakedown" from the vehicles was in the north or westbound lane of travel—plaintiff's decedent's right side of the road and the wrong side of the road for defendant's intestate. The second is that a gouge mark was found in the center of said heaviest concentration of debris in the north lane. Helton v. Huckeba, supra, loc. cit. 276 S.W.2d 83. The most significant fact, however, is that there was a tire mark leading from the *right* front wheel of the Prentzler pickup truck, back to the west for 12 feet and *over the center line* 6 inches into the *westbound* lane of travel, and that there was a tire mark from the right rear wheel of the Prentzler pickup truck leading to the west for some 10 feet. The jury could infer from all of the circumstantial evidence that the Prentzler pickup truck was entirely and wholly on its left and wrong side of the road, with its right side 6 inches from the center line, at which time its left front came into contact with the dump truck at a point 4 feet north of the center line. The pavement at this point is about 20 feet wide. The pickup truck, being 5 feet and 10 inches wide, thus occupied 5 feet and 16 inches of the westbound lane, leaving about 4 feet for the dump truck, 7½ feet wide, to operate on the pavement. The resultant impact was such, so the jury could find, that the pickup truck was spun around on the spot in a counterclockwise direction, as indicated by said tire marks. The dump truck, being struck on its left side (perhaps first on its left front fender as indicated by the photographs), was also spun in a counterclockwise direction. When the rear wheel of the dump truck struck the north bank or back slope, its momentum caused it to roll over and over for some 202 feet where it came to rest. Thus, all of the evidence shows with reasonable certainty that defendant's intestate was on the wrong side of the road. See the recent analogous case of circumstantial evidence, Martin v. Sloan, Mo., 377 S.W.2d 252, 258 [7], where it was held that "intermittent skid marks" and "dashes" which led to plaintiff's decedent's truck on its own east side of the road, the location of the "main center" debris and gouge marks in the east lane, and skid marks starting at the "main center" of the debris and which extended across the highway to the other (Chevrolet) vehicle, constituted sufficient evidence that the point of impact occurred in the east lane of the highway which was the wrong lane for the Chevrolet automobile. Here, plaintiff made a submissible case on her assignment of negligence that defendant's intestate was on the wrong side of the road, and defendant's Point I raising such issue is overruled.

■ Defendant's only other Point (II) is that the court erred in permitting the patrolman (Sergeant Price) to draw a circle on Plaintiff's Exhibit 14 (the plat), marked Point "I" to indicate where the heaviest concentration of debris and shakedown was located. We note that there was no objection to the engineer placing on the plat at the trial a dot 4 feet north of the center line and denominating it "Point I". The contention here seems to be that the area encircled in red constituted an opinion from Sergeant Price that it was the point of impact. Sergeant Price's testimony, however, was not that it was his opinion that the red circled area was the point of impact, which would be an improper conclusion under Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247 (where the witness stated that the "point of impact is at the center of the debris and that is where we come to the conclusion that that is the point of impact, * * *"), and Chester v. Shockley, Mo., 304 S.W.2d 831, 834 [1], where a like conclusion was condemned. Sergeant Price merely indicated on the plat the area of the heaviest concentration

of debris and shakedown *which he had observed* on the pavement. An understanding of his testimony by the jury was thus aided. See annotation 9 A.L.R.2d 1047, "Use and Admissibility of Maps, Plats, and other Drawings to Illustrate or Express Testimony." Point II is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.