Nancy Elizabeth PRENTZLER, by her next friend, Rollie Frazee, Respondent,

v.

Erma Sue SCHNEIDER, Administratrix of Estate of Jacob K. Schneider, Deceased, Appellant.

No. 52075.

Supreme Court of Missouri, En Banc.

Dec. 30, 1966.

Rehearing Denied Feb. 13, 1967.

—◆—

W. F. Daniels, Fayette, for respondent.

Terence C. Porter, Columbia, Welliver, Porter & Cleaveland, Columbia, of counsel, for appellant.

HENLEY, Judge.

This is an action for damages for wrongful death of plaintiff's husband as a result of a collision of two motor vehicles. Judgment was for plaintiff for $15,000 and defendant appealed to the Kansas City Court of Appeals. That court reversed and remanded for error in permitting plaintiff to testify to facts of the collision, because she was incompetent as a witness by reason of § 491.010, RSMo 1959, V.A.M.S. (commonly referred to as the Dead Man's Statute), the other party to the action being dead. On application of both plaintiff-respondent and defendant-appellant, we ordered the case transferred to this court. It is to be determined here " * * * the same as on original appeal." Article V, § 10, Constitution of Missouri, V.A.M.S.; Civil Rule 84.05 (h), V.A.M.R. We affirm.

The collision occurred July 2, 1962, on Missouri Highway No. 5 between Fayette and Glasgow in Howard county. Kenneth Prentzler was driving his Chevrolet pickup truck east with his wife, this plaintiff, as a passenger when it collided violently with an International dump truck being driven west by Jacob Schneider. Both drivers were killed instantly. Mrs. Prentzler is the only surviving witness to the collision.

The widow of each driver filed a wrongful death action in Chariton county: (1) Erma Sue Schneider vs. Paul Allen Prentzler, Administrator of the estate of Kenneth Lee Prentzler, deceased; (2) Nancy Elizabeth Prentzler, by her next friend vs. Erma Sue Schneider, Administratrix of the estate of Jacob K. Schneider, deceased. A change of venue was taken in each case; the first mentioned case was sent to Saline county; the second to Randolph county. The first case tried, Schneider vs. Prentzler, Administrator, resulted in a judgment for Mrs. Schneider for $25,000. Defendant, Prentzler, as administrator, appealed and the judgment was affirmed by this court. See Schneider v. Prentzler, Mo., 391 S.W. 2d 307.

■ The compulsory counterclaim rule, Civil Rule 55.45 (a), V.A.M.R., was not applicable to this plaintiff when the two cases were filed in Chariton county, because she was not a party defendant and was not required to and could not plead in the other action. Hayden v. Yelton, Mo. App., 237 S.W.2d 249, 251–52 [2, 3]; State ex rel. Buchanan v. Jensen, Mo., 379 S.W. 2d 529.

Five days before the trial of this case defendant, Schneider, filed a motion for summary judgment to which was attached in support thereof the transcript of all proceedings and evidence in the Saline county case. Grounds of the motion were that this action is barred by reason of the verdict and judgment in the Saline county case, Schneider v. Prentzler, Administrator. The motion was overruled on trial day.

One of the points relied on by defendant is that the court erred in overruling her motion for summary judgment. Defendant contends that the doctrine of estoppel by verdict and judgment is applicable; that plaintiff, Prentzler, is estopped from maintaining this action by the verdict and judgment in the first case tried.

The petition in each case pleaded negligence on the part of each defendant's deceased driver in driving on the wrong side of the road. The answer in each case pleaded contributory negligence of each plaintiff's deceased husband in driving on the wrong side of the road. The first case tried, Schneider v. Prentzler, Administrator, was submitted on negligence of that defendant's decedent in driving on the wrong side of the road and contributory negligence of that plaintiff's decedent in driving on the wrong side of the road. The instant case, the second case tried, was submitted on the same charges of negligence and contributory negligence. As indicated, in the first case, the Saline county jury found that that defendant's decedent (Prentzler) negligently drove on the wrong side of the road and that that plaintiff's decedent (Schneider) was driving on his right side of the road and was not contributorily negligent. In the instant case the Randolph county jury found, contrary to the finding of the Saline county jury, that this defendant's decedent (Schneider) negligently drove on the wrong side of the road and that this plaintiff's decedent (Prentzler) was driving on his right side of the road and was not contributorily negligent. Thus, the results in the two

separately tried cases are diametrically opposed on the basic fact issue, an anomalous circumstance and predicament this defendant anticipated and sought to avoid by her motion for summary judgment.

■■ What defendant refers to as the doctrine of estoppel by verdict and judgment is aptly stated in Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118, 1. c. 122–123: "Generally, in order to have estoppel by a former judgment (res adjudicata), there must be: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. Rossi v. Davis et al., 345 Mo. 362, 133 S.W.2d 363, loc. cit. 373, 125 A.L.R. 1111, and cases there cited. The rule stated is, however, general and not exclusive. Res adjudicata may be as to a judgment or as to some particular facts litigated between the parties. In re McMenamy's Guardianship, 307 Mo. 98, loc. cit. 110, 270 S.W. 662, loc. cit. 665; Boillot v. Income Guaranty Co., Mo.App., 124 S.W. 2d 608, loc. cit. 611. * * * 'A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, *upon either the same or a different cause of action.* This doctrine, that *a fact or question* which has been actually and directly in issue in a former suit and has been judicially passed upon and determined by a domestic court of competent jurisdiction cannot be litigated again in a subsequent suit between the same parties or their privies, is simple and universally recognized in almost innumerable cases, the only difficulty or con-

flict being in its application to particular cases'." (Emphasis theirs.)

■ Obviously, the fact issue determined in the first case tried was the same as that in this case. But, does that determination estop plaintiff from maintaining this action? We conclude that it does not. She was not a party to that action, nor was she in privity with the defendant in that action.

As stated, the defendant in the first action tried was Paul Prentzler, administrator of the estate of plaintiff's deceased husband, Kenneth Lee Prentzler. He, as administrator, was the only proper party defendant in that action. Clarke v. Organ, Mo., 329 S.W.2d 670, 674 [4]; § 537.020, RSMo 1959, V.A.M.S. This plaintiff, as the widow of Kenneth Prentzler, would not have been a proper party defendant, and could not have had any right of control over the defense of that action. The defendant in the first action could not have asserted as a counterclaim the claim for wrongful death of Kenneth Prentzler, this plaintiff being alive. Day v. Brandon, Mo., 394 S.W.2d 405; § 537.080, RSMo 1959, V.A.M.S.

The claim asserted by plaintiff for the wrongful death of her husband is an entirely new claim created by statute; it is not the result of a revival of a claim belonging to the deceased in his lifetime; it did not exist before her husband's death. Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920; Glasgow v. City of St. Joseph, 353 Mo. 740, 184 S.W.2d 412, 415 [5]. In Plaza Express Company v. Galloway, et al., 365 Mo. 166, 280 S.W.2d 17, 23 [6, 7], this court held that the widow and administrator are different persons and are not in privity with each other, and that determination of a fact issue in an action by one is not res judicata in another action growing out of the same accident.

For the reasons stated, we hold that plaintiff is not estopped from maintaining this action by the judgment in the first ac-

tion; the court did not err in overruling defendant's motion for summary judgment.

An allied point relied on by defendant is that the court erred in striking from her answer the defense that the judgment in the first case tried is res judicata of the issues in this action. What we have said above disposes of this point adversely to defendant.

■ Another point relied upon by defendant is that plaintiff failed to make a submissible case and that plaintiff's decedent was guilty of contributory negligence as a matter of law; that, therefore, the court erred in overruling her motions for directed verdict. We review the evidence in a light most favorable to plaintiff, giving her the benefit of all favorable inferences arising therefrom, and disregard defendant's evidence except insofar as it may assist plaintiff. Goddard v. St. Joseph Light and Power Co., Mo., 379 S.W.2d 565.

We use essential portions of a statement of the evidence by the Court of Appeals. Plaintiff testified that her husband was driving the Chevrolet pickup truck in an easterly direction at a speed of 40 to 45 mph. She was riding in the right front seat. She first saw defendant's dump truck as it came over a rise in the highway from the east, traveling in a westerly direction. The dump truck was in the middle of the road. She stated that its driver tried to get back, that his front wheels were turned, but that he could not and did not get back to his right side of the road before the collision. The pickup was in its proper lane near the south edge of the pavement. She did not know its exact distance from the edge of the pavement, but it may have been one or two feet. She did not remember the impact itself, or anything thereafter, until she awakened in the hospital some days later. She stated that the collision occurred "all of a sudden", or "real fast", and that she did not know exactly how much time elapsed from the time she

first sighted the dump truck until the impact, but that it might be one, two, three or four seconds. She did not know whether her husband turned the front wheels of the pickup or applied his brakes.

After the collision the pickup truck came to rest slanting across the eastbound or south lane of the highway facing northwest. The right front wheel of the pickup was on, or slightly north of, the center line of the highway and the rear end was on the south edge of the pavement, or perhaps partly on the shoulder. The Schneider dump truck came to rest 202 feet west of the pickup, off the road on the north side, with its front wheels at the north edge of the pavement and its rear end in the ditch, facing almost due south. A breather cap from the pickup was found across the ditch and on top of the embankment on the south side of the road, approximately 15 feet from the south edge of the pavement. The left hand door of the pickup had been torn off and was found just off the pavement on the south shoulder of the road 100 feet west of where the pickup came to rest. The right front wheel of the dump truck was found on the road 50 feet east of where the dump truck came to rest.

There was debris, consisting of water, oil, broken metal parts, broken glass, shakedown, shells which had been carried in the pickup, etc., "literally all over the road." Debris was on the south shoulder on the south half of the road, under the pickup truck, on the north lane of the road, and on the north shoulder. The heaviest concentration of debris was in the westbound or north lane, and the center of this heaviest concentration appeared to be about four feet north of the center line. The sheriff of Howard county and another witness, a Mrs. Brown (near whose home the collision occurred), testified that the heaviest concentration of debris was in front of where the pickup came to rest. The investigating highway patrolman placed the heaviest concentration of debris at a point 12 feet west of the front of the pickup. There was a gouged place in the highway in the south lane near the pickup about two feet from the south edge of the pavement. There was also a gouged place in the highway in the north lane about in the center of the heaviest concentration of debris. A skid mark 12 feet long ran from the right front wheel of the pickup westerly in a curve to a point 6 to 12 inches north of the center line. Another skid mark near the south edge of the pavement extended in an arc from the left rear wheel of the pickup 10 feet to the west. The dump truck had dual rear wheels. Marks made by dual tires in the south lane started at a point east of the point where the pickup came to rest and ran west, curving across the center line into the north lane. For a vehicle traveling west these dual tire marks curved to the right and led up to the heaviest concentration of debris. There were marks on the north shoulder and bank of the highway showing where the dump truck hit the bank 45 feet west of the point where the pickup came to rest. Other marks indicated where the dump truck rolled over twice on its right side before it came to rest.

At the point where the pickup came to rest the road is slightly banked and slants or drains to the north. Water and oil was running out of the front of the pickup across the north lane.

The pickup was damaged on its left front corner and on all its left side. The driver's side of the front seat was completely demolished. The left front headlight was gone, and the left front wheel broken. Although the hood was bent and damaged the grill between the headlights did not show evidence of impact. The dump truck was not damaged in the front. Both of its headlights were intact and unbroken. The left front fender was damaged on the side. The left front door, left front overhang of the dump body, and the left side of the

saddle-type gasoline tank showed considerable damage from the impact.

In approaching the point of collision from the west, traveling east, the pickup was on a relatively straight road. In approaching the point of collision from the east, the dump truck traveled west around a slight curve (beyond which a driver could not see) and over a rise in the road.

All of the witnesses repeatedly illustrated their testimony by marking on photographs and rough diagrams of the scene, which no doubt presented to the jury a picture clearer and more accurately descriptive than can be expressed by words.

Although the area of greatest concentration of shakedown and debris was in the north lane of the highway, this fact alone does not make implicit a finding that the point of impact was in the north lane. Determination of the point of impact is peculiarly within the province of the jury. See Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242 and Chester v. Shockley, Mo., 304 S.W.2d 831.

A jury reasonably could find from this evidence that the dump truck, approaching the scene of the collision from the east, traveled over the center line onto the south half or eastbound lane of the highway as it negotiated the rise and blind banked curve; that although its driver may have tried, he failed to get the whole of his truck back across the center line onto the north half of the road before the collision; that the pickup truck was on its right side of the road south of the center line headed east when the two vehicles collided violently south of the center line. Specifically, the testimony of the plaintiff and the physical facts, such as the contour of the roadway, the dual wheel marks found south of the center line beginning east of and continuing through parts of the debris or shakedown, the relative size and weight of the two vehicles as shown by photographs (the dump truck being the larger and heavier), and the positions in which the vehicles came to rest, would support a finding by the jury that defendant's decedent negligently operated the dump truck on its wrong side of the road into collision with the pickup truck and that plaintiff's decedent was not negligent.

Considering this evidence we may not say plaintiff's decedent was guilty of contributory negligence as a matter of law. We hold that plaintiff made a submissible case and that the court did not err in overruling defendant's motions for directed verdict. Our ruling on this point also rules defendant's contention that the court erred in giving instruction P–1, offered by plaintiff, because the instruction was not supported by substantial evidence.

The last point relied on we need consider is defendant's contention that the court erred in permitting plaintiff to testify to facts concerning the collision, because she was incompetent as a witness under the Dead Man's Statute. Plaintiff asserts that she was not incompetent as a witness, but, if incompetent, defendant waived objection to her competency by introducing in evidence in this case all of her testimony given in the trial of the case in Saline county. Defendant does not answer this assertion, except to say in oral argument here that the exact question has not been decided by an appellate court of this state and that plaintiff's Saline county testimony was offered by her solely in support of her motion for summary judgment and was considered by the court only, not by the jury.

Plaintiff's testimony in the trial of the case in Saline county was substantially the same as her testimony at this trial.

We need not decide whether § 491.010 made plaintiff incompetent as a witness. Assuming for the purposes of this opinion, without deciding, that plaintiff was incompetent, did the defendant waive plaintiff's incompetency by introducing her Saline county testimony in this case and thereby render her objection impotent?

It is well settled that a party protected by the statute may by his affirmative act waive the incompetency of the other party as a witness. Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 713–716 [1, 2], 107 A.L.R. 465 is analogous to the instant case on the essential facts relating to waiver. The Lampe case was a proceeding to establish a note as a demand against the estate of Birkenback, opposed by defendant Trust Company as executor. After the claim was allowed by the Probate Court it was appealed and tried at least twice in the circuit courts, the first time in Greene county and the last time in Polk county. In the Greene county trial defendant introduced in evidence a transcript of the cross-examination of plaintiff, Lampe, as a witness for his brother in Probate Court on a claim of the brother against the Birkenback estate. The cross-examination went into facts pertaining to plaintiff's claim against the estate. Judgment for the defendant estate in the circuit court of Greene county was set aside, a new trial granted plaintiff, Lampe, and the case went to Polk county on change of venue. The transcript of plaintiff's cross-examination as a witness in his brother's claim in Probate Court was not offered in evidence in the Polk county trial. At the trial in Polk county plaintiff was permitted to testify to facts relating to transactions with the deceased in connection with the note, all over defendant's objection that plaintiff was incompetent as a witness. Plaintiff contended that defendant had waived his incompetency by cross-examining him regarding his claim when he was a witness for his brother in Probate Court. The court expressed no opinion as to whether plaintiff's incompetency was waived merely by his cross-examination in his brother's case, because, the court said, defendant used plaintiff's cross-examination against him by offering it in evidence in the Greene county trial and thereby waived his incompetency. The court held "* * * that, *by offering plaintiff's former testimony* (about the transaction here

at issue) *as evidence in this case, at the first trial thereof,* defendants have waived his competency *herein* as a witness as to the * * * transaction between himself and Birkenback concerning the note upon which he bases his claim." (Emphases for "at the first trial thereof" and "herein" ours.)

We hold that by the introduction in this case of plaintiff's testimony in the first case tried, pertaining to the facts of the collision, defendant waived plaintiff's incompetency as a witness. It is of no consequence that this testimony was offered solely in support of her motion for summary judgment and was not considered by the jury. The use of the transcript of plaintiff's testimony against her on the motion for summary judgment amounts to the same as calling her as defendant's witness on the motion. By so requiring her to testify for that purpose defendant made her competent as a general witness in the case.

During oral argument in this court defendant specifically abandoned her point relating to misconduct of a juror.

The judgment is affirmed.

All concur except FINCH, J., who concurs in part and dissents in part in separate opinion filed.

## CONCURRING AND DISSENTING OPINION

FINCH, Judge.

I respectfully dissent from that portion of the majority opinion which holds that defendant waived objection to incompetency of plaintiff under § 491.010, RSMo 1959, V.A.M.S. I concur in the other portions of the majority opinion.

Making the same assumption as the majority opinion that § 491.010 made plaintiff incompetent as a witness, I find nothing to constitute a waiver of that incompetency.

Defendant did not take plaintiff's deposition or submit interrogatories to her. Neither did she at the actual trial of this case seek to offer all or any part of a transcript of testimony which plaintiff had given in the Saline County case (Schneider v. Prentzler, Mo., 391 S.W.2d 307). The only thing which defendant did was to move for summary judgment under Civil Rule 74.04, V.A.M.R. This motion was on the theory that the suit was barred under the doctrine of estoppel by judgment by reason of the verdict and judgment in the previously tried Saline County case. The entire transcript of all proceedings and evidence in the Saline County case was attached to the motion for summary judgment. That transcript included testimony given by plaintiff in that case. This, in my judgment, was not equivalent to utilizing discovery procedures and waiving the incompetency in that manner, nor was it the same as introducing in the actual trial all or part of a transcript of testimony given by the incompetent witness in a previous trial or hearing. The latter is what occurred in Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, which is cited by the majority opinion as an analogous case.

Defendant merely sought to utilize her right to ask disposition of this case on motion under Rule 74.04. In effect, she said that the trial court should look at the prior Saline County case and it would see that the doctrine of estoppel by judgment was applicable. The court, of course, had to look at the transcript in that case to determine whether to apply the doctrine of estoppel by judgment but the transcript was not used in the actual trial.

The effect of the majority opinion is to say to a party under circumstances such as that which confronted defendant that the summary judgment procedure is utilized at his peril. If a witness who testified in the previous case would be incompetent in the case at bar, and movant is not successful in urging the motion for summary judgment, then the incompetency of the witness has been waived in the process. Such a result is reminiscent of a rule which at one time prevailed in some courts that where both parties moved for a directed verdict, they thereby waived trial by jury. In my judgment, a party should not be confronted with such a Hobson's choice in a decision whether to utilize summary judgment procedure.