NORMAN CORNWELL, Appellant, v. HIGHWAY MOTOR FREIGHT LINE, INC., a Corporation, and CECIL LANCASTER.—152 S. W. (2d) 10.

Division One, June 12, 1941.

20

*Joseph J. Goodman* for appellant.

*Oliver J. Miller* and *Lashly, Lashly, Miller & Clifford* for respondents.

**DALTON, C.**—Action for $50,000 damages for personal injuries. Plaintiff was injured in a collision between an automobile operated by him and a motor truck, tractor and trailer, driven by defendant Lancaster in the opposite direction upon the highway. Lancaster was an employee of the defendant Highway Motor Freight Line, Inc. The jury returned a verdict for defendants, upon which judgment was entered, and plaintiff has appealed.

The amended petition upon which the cause was tried contained five assignments of defendants' negligence, but the cause was submitted to the jury upon an instruction authorizing recovery if defendants were guilty of negligence in operating the motor truck to the left or south side of the center of the highway and in failing to keep the truck "as close to the right hand side of the highway as practicable." The answer of defendant Lancaster was a general denial. The other defendant, in addition to a general denial, charged plaintiff with contributory negligence and made nine specific assignments of such negligence.

The collision occurred on a straight, level, three lane, paved section of Highway 66, about one and one-half miles west of an intersection referred to as the Diamonds (about forty miles west of St. Louis), and at about 7:30 p. m., November 21, 1936. Plaintiff was driving his 1929 model Chevrolet automobile eastwardly on the south or right hand lane of said highway. He was traveling at from 30 to 35 miles per hour, and the headlights of his car were burning. Plaintiff first observed the truck approaching from the opposite direction when it was about 200 feet away, and it was then on its own side (the north lane) of the highway. Plaintiff observed the truck sway a couple of times, come over to the center lane of the highway and then continue to come over to the south side of the highway. Plaintiff continued to drive on his right hand side of the highway, but did not go onto the shoulder. When the truck was about 25 or 30 feet away it "started cutting" south and, when it was within 4 or 5 feet of plaintiff's automobile, the driver of the truck "suddenly straightened

the tractor out" ("cut back right quick"), so that the tractor passed to the north of plaintiff's automobile (on plaintiff's left), but the trailer overturned (turned to the south, to its left) and fell upon plaintiff's automobile, demolishing the automobile and injuring plaintiff. Plaintiff said that the driver cut the tractor back so quickly it threw the trailer on top of the automobile; and that plaintiff's automobile "never did run into the outfit at all." There was other evidence that "the truck was on the wrong side of the highway" before the collision; that the left side of the trailer turned over on top of the automobile as it was passing; that, after the collision, the tractor and trailer were on their left sides, off the shoulder of the highway on the south side; that the automobile was mashed down in the south lane of the highway; and that there was no oil and glass on the north side of the highway, but only on the south side 40 or 50 feet east of the overturned truck.

According to defendants' evidence the truck was traveling west at about 20 or 25 miles per hour. The driver observed plaintiff's automobile approaching when it was about 1200 feet away. It was traveling 40 to 45 miles per hour, straddling the black line and angling over toward the north side of the highway. The truck driver pulled to his right, on to the north shoulder of the highway, and continued on, until the automobile was 75 feet away. The automobile continued to approach the truck head-on. To avoid a head-on collision, the truck driver swerved the tractor to the south, so that the tractor cleared the automobile and passed on the south side of the automobile, but the automobile collided head-on with the right front end of the trailer and went underneath the right rear of the trailer. The trailer overturned to the south, fell on its left side and rolled over, and came to rest on its right side with its top towards the north and part of the tractor and trailer off the highway on the south side. There was no damage whatsoever on the left side of the trailer, but there was damage at the right front part of the trailer, and the right rear wheel was out of line.

There was also evidence that immediately after the collision, oil, glass and debris from the wrecked automobile littered the north side of the highway (where the Chevrolet had stopped); and that only the oil from the overturned tractor appeared on the south side of the highway. Photographs, offered in evidence, tended to show the position of the tractor and trailer immediately after the collision (both lying on their right sides), the type and location of the damage to the trailer and to the automobile, to-wit, the damage to the top and right front end of the trailer, and the damage to the right side of the Chevrolet, that is, to the right side of its radiator and to its right fenders, while the left front fender appeared to be intact. Other evidence purported to show plaintiff's conduct and whereabouts during the afternoon and evening, the manner in which he drove his

automobile immediately prior to the collision, and that he was intoxicated.

Error is assigned on the giving of two instructions requested by defendants and on the admission of certain evidence over plaintiff's objection. The first instruction objected to, Instruction 3, reads as follows: "The Court instructs the jury that the burden is upon the plaintiff to prove by the preponderance of all the evidence in the case, every fact, which, under the instruction of the Court, he is required to prove in order to make out his case, and if the jury believe that the evidence as to any one of such facts is in favor of the defendants, or even if you believe the evidence as to any one of such facts is equally balanced between the plaintiff and the defendants, then the plaintiff has failed to make a case, and it is the duty of the jury to find a verdict in favor of the defendants."

Plaintiff submitted the cause on two instructions, one on liability and one on the measure of damages. Plaintiff's Instruction 1, submitting the question of liability, contained a clause to the effect that "plaintiff at all times was exercising the highest degree of care for his own safety." Defendants asked, and the court gave, instructions with reference to plaintiff's alleged contributory negligence, but plaintiff asked no instruction placing the burden on defendants to prove the contributory negligence, if any, of plaintiff.

Appellant contends that Instruction 3, when read in connection with the other instructions, including Instruction 1, "erroneously places upon plaintiff the burden of proof with respect to the issue of contributory negligence submitted by the other instructions;" and that "the instruction, by telling the jury that plaintiff ▉ had the burden of proving by a 'preponderance of all the evidence in the case, every fact, which, under the instruction of the court, he is required to prove in order to make out his case, etc.,' without further advising the jury as to the law on the burden of proof in respect to the charge of contributory negligence, constituted a misdirection of the law by placing upon plaintiff the burden of proving his own freedom of contributory negligence and was therefore highly prejudicial."

Appellant relies particularly on the case of Szuck v. Ni Sun Lines, 332 Mo. 469, 58 S. W. (2d) 471, 473. In that case error was assigned upon the giving of defendant's Instruction 6 which, in part, is as follows: "The Court instructs the jury that the burden of proof is on the plaintiff to establish by the preponderance or greater weight of the evidence, the facts necessary to a verdict in his favor under these instructions. . . ." The Court said: "Contributory negligence is an affirmative defense, and the burden of proving it rests on the defendant. . . . While Instruction No. 1, given at plaintiff's request, required the jury to find from the evidence as a condition of plaintiff's recovery that his automobile was being driven and operated without any negligence on his part, it did not place the burden of

proving plaintiff's freedom from negligence upon him. Absent proof of such negligence the jury would find that plaintiff was not negligent. But Instruction No. 6 told the jury that the burden of proof was 'on the plaintiff to establish by the preponderance or greater weight of the evidence, the facts necessary to a verdict in his favor under these instructions.' In the light of Instruction No. 1, which was one of 'these instructions,' the jury might well conclude that this meant that the burden was on plaintiff to prove that his automobile was driven and operated without any negligence on his part, and the concluding paragraph of Instruction No. 6 did not clarify the matter. We think the giving of this instruction under such circumstances was prejudicial error.'' Other cases cited by appellant are less applicable here.

Appellant complains particularly that Instruction 3 made no mention of the burden of proof with reference to the charge of contributory negligence. Appellant compares the wording of Instruction 3, in this case, to-wit, ''every fact, which, *under the instruction of the Court,* he is required to prove in order to make out his case'' with the words, in the instruction in the Szuck case, to-wit, ''to establish by the preponderance of the evidence the facts necessary to a verdict in his favor *under these instructions.*'' Appellant says that both instructions placed upon defendant the burden to prove absence of contributory negligence, since due care by plaintiff was required by plaintiff's first instruction in each case.

We think, however, that saying the burden of proof was upon plaintiff to establish ''the facts necessary to *a verdict in his favor* under these instructions,'' was a very different thing from saying that the burden was upon plaintiff to prove ''every fact, which, under the instruction of the court, *he is required to prove in order to make out his case.*'' A plaintiff might well make out his case and yet not be entitled to a verdict, because barred from recovery by reason of his own negligence which directly contributed to his injury.

We do not think Instruction 3 erroneous, or that it misled the jury, or that it had the effect of placing the burden of proof as to contributory negligence upon the plaintiff. The instruction would not be so understood. This court dealt with almost the identical situation in the case of Bleil v. Kansas City (Mo.), 70 S. W. (2d) 913. In the Bleil case a similar instruction on burden of proof was given for defendant and under very similar circumstances. In that case ''plaintiff's instruction covering the whole case, and authorizing a verdict for him, not only predicated his right to recover on the finding of the facts constituting defendant's negligence, but also on a finding 'that plaintiff at the time and place in question was in the exercise of ordinary care for his own safety.' '' (70 S. W. (2d) 913, 914). The defendant had asked, and the court gave, an instruction on contributory negligence. The court said (70 S. W. (2d) 913, 914): ''The

plaintiff asked no instruction on the burden of proof, though clearly entitled to one placing such burden on defendant as to his contributory negligence. The defendant was also given the Instruction E mentioned placing on plaintiff the burden of proving 'his case' by a preponderance of the evidence. The plaintiff's position is that the court's Instruction E placing the burden of proof on plaintiff to prove 'his case' by the greater weight of the evidence, without instructing that the burden of proof was on defendant to prove contributory negligence, both being at issue, amounted to and would be understood by the jury as requiring plaintiff to disprove his own contributory negligence. Defendant contends that Instruction E could not reasonably have been so understood by the jury, as plaintiff's contributory negligence could not be part of 'his case' which plaintiff was required to prove by the greater weight of the evidence; and further that, if plaintiff thought the instruction was misleading in this respect, he should have requested an instruction telling the jury that, as to the alleged contributory negligence on plaintiff's part, the burden of proof was on the defendant.

"We think defendant is correct. This is the common sense of the matter. . . . It would seem hardly possible that, after having listened to the contentions of the parties and the evidence supporting each, when the court told the jury that 'the burden of proof is upon the plaintiff to prove his case by a preponderance of the evidence,' the jury would understand that this meant that plaintiff must disprove the defense in the same way. Surely an intelligent jury would understand that plaintiff's case did not include defendant's defense."

We fully agree with the reasoning in the Bleil case, supra. Further discussion is unnecessary. If plaintiff desired an instruction placing the burden of proof on defendants to establish contributory negligence, he should have requested such an instruction. Since he did not do so, he may not complain. [See also, Flint v. Loew's St. Louis R. & A. Corporation, 344 Mo. 310, 126 S. W. (2d) 193 (reviewing cases); and Kunkel v. Griffith, 325 Mo. 392, 29 S. W. (2d) 64, 67.] The assignment is overruled.

 Appellant assigns error on the giving of defendants' Instruction 6, as follows: "The Court instructs the jury that if you believe and find from the evidence that the plaintiff on the occasion mentioned in the evidence while driving eastwardly and operating his automobile along Highway 66, drove and operated the same from the south or right side of said highway over and on to the north or left side of said highway, at the time that defendant's truck was being operated westwardly along the north side of said highway and collided with said truck, if you so find, and if you further believe and find from the evidence that plaintiff in so doing, if you so find, was negligent and such negligence, if any, directly caused or contributed to cause the injuries complained of by him, then and in that case plain-

tiff is not entitled to recover and you will find your verdict for defendants."

Appellant contends that this instruction erroneously "broadened the issues beyond the scope of the pleadings;" that, "the instruction submitted the issue of plaintiff's negligence in driving his automobile from the south or right side of the highway over on to the north or left side, so as to cause the collision; and that no such charge of contributory negligence is contained or set forth in the answers." Appellant insists that the Instruction 6 submitted "a common law charge of negligence not pleaded." Appellants say: "There is nothing inherently wrong with the instruction, but the trouble lies in the fact that nowhere in the answer is found an allegation to justify its submission to the jury" and the issues in the case are made by the pleadings.

The petition, among other assignments of negligence, charged the defendants with violating paragraph (b), Sec. 7777, R. S. 1929 (now Sec. 8385, R. S. 1939). The corporate defendant's answer charged plaintiff with violation of paragraph (b) and (c) of the same section, and set out *haec verba* the paragraphs, but referred to them as being in Sec. 7778, R. S. 1929. These paragraphs provide that "All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable;" and that "an operator or driver meeting another vehicle coming from the opposite direction on the same highway, shall turn to the right of the center of the highway so as to pass without interference." Defendants' answer further, as a separate assignment (7th) alleged "that plaintiff negligently ran, drove and operated" his automobile so as to cause the same to strike and collide with defendants' truck moving eastward on the same highway.

We do not think the instruction broadened the scope of the issues made by the pleadings. While the answer did not expressly allege that plaintiff negligently drove his automobile from the south, or right hand side of the highway over to the north or left hand side, it did allege ▮▮▮ violation of the statute requiring plaintiff to drive as near to the right hand side of the road as practicable and to turn to the right of the center of the highway on meeting a vehicle traveling in the opposite direction, and it did allege that plaintiff so drove and operated his automobile as to cause it to collide with defendants' truck on the highway. If plaintiff wanted to know the direction of operation of the automobile and the place on the highway where the collision occurred he should have moved to make the answer more definite and certain. We think the instruction was sufficiently within the general scope of the pleadings and therefore not erroneous as broadening the scope of the issues made by the pleadings. [Jordan v. St. Joseph Light Co., 335 Mo. 319, 73 S. W. (2d) 205, 209.]

Again, plaintiff did not move to make the general allegations of the answer more definite and certain, nor object to defendants' proof

that plaintiff did in fact drive from the south to the north side of the highway and that the collision happened on the north side of the highway. It is, of course, true that the rule against giving instructions which are broader than the pleadings applies to instructions on affirmative defenses. [Rucker v. Alton Railroad Co., 343 Mo. 929, 123 S. W. (2d) 24, 26.] The essence, however, of the charge of contributory negligence in the seventh assignment, was the operation of the automobile by plaintiff so as to cause the same to collide with defendants' truck moving eastward on the same highway. The charge was subject to amendment that in so doing plaintiff drove from the south to the north side of the highway. Such an amendment would not have changed the nature of the charge which was defectively stated. The indefinite charge of contributory negligence, however, was supplemented by specific evidence.

There was no objection to *any* of defendants' evidence on the ground that it was not within the issues made by the pleadings. There is no suggestion that the evidence does not support the instruction. The evidence upon which the instruction was based was within the general assignments of contributory negligence. It came in without objection, supplemented the defective allegations of the answer and was sufficient to sustain the giving of the instruction. Plaintiff may not now complain of the instruction. [See State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S. W. (2d) 21, 23; Sawyer v. Wabash Ry. Co., 158 Mo. 468, 476, 57 S. W. 108; North Nishnabotna D. D. v. Morgan, 323 Mo. 1, 18 S. W. (2d) 438.] The assignment is overruled.

Appellant's third assignment of error is that "the trial court erred in admitting, over the objection of plaintiff, the testimony of Wayne G. Henderson, a witness for the defendants, to the effect that certain damage to the right front side of the trailer was caused by an object going in the opposite direction." Appellant contends that "the testimony of the witness invaded the province of the jury;" that it "was highly prejudicial to plaintiff and concerned a matter in great dispute" and that "the witness was not qualified to give an expert opinion nor was the matter a proper subject of expert testimony."

Wayne G. Henderson, a witness for defendant, was a member of the Missouri State Highway patrol, with rank of a Sergeant. He reached the scene of the collision some twenty or thirty minutes after it happened. He found the tractor and trailer on their right sides, on the south side of the highway, headed west. The wrecked automobile was in the north or third lane of the highway, headed west. When the witness arrived there was oil, glass and other debris on the north side of the highway and, also, oil running out of the tractor on the south side of the highway. The Chevrolet was moved onto the north shoulder of the highway, under the witness' supervision. After the

tractor and trailer were uprighted, the witness found no damage on the left side of the trailer, but saw the damage to the right front part of the trailer. He examined the right rear wheel of the trailer and found it had been pushed back out of line. The witness was shown pictures of the trailer and of witness when he was checking the right rear wheel. He said this wheel was about six inches under the side of the trailer. The witness was shown another photograph purporting to show the condition of the right front side of the trailer and the condition of the supports or braces on the outside of the trailer, particularly the two on the right side furthest to the front. The photograph shows these braces to be splintered and the splinters bent back and some of the splinters directed toward the rear of the trailer. Both supports appear to be broken in two a short distance, about three board widths, above their base. A dark splotch appears on the body of the trailer, extending between the two broken supports, that is, between the breaks in the supports and it extends back to a point. In other words, the mark is not as wide or as pronounced farther back. The witness was asked, ''Sergeant, in connection with the examination of that mark, does it appear here that the mark was made by a moving object going by that truck or not? Mr. GOODMAN: I object to that, because that is highly speculative, and this man is not qualified as a physicist or engineer to tell how the mark was made. The COURT: I think a layman could tell. He may answer that.'' Exception was saved and the witness answered, ''Yes, it was made by something going in the opposite direction.'' This answer was the only evidence that was permitted to remain in the record after objection, although the record shows other questions were objected to, and were withdrawn, or objections were sustained, or the questions were answered and the answers were stricken.

Appellant contends that the above answer of witness, admitted over objection, is reversible error, and that the testimony was improper and highly prejudicial, since it supported defendants' theory of the case. It will be noticed that the witness said the mark was made by *something* going in the opposite direction. He did not say it was caused by plaintiff's automobile, but it was conceded that the truck and automobile were traveling in opposite directions at the time of the collision.

There was no direct evidence as to what caused the particular mark on the body of the trailer, or as to what broke the uprights and caused the damage to the trailer, but defendants' witnesses fixed that place as the point where the automobile struck the trailer. One of defendants' witnesses, the helper on the truck, conceded that part of the damage ''could have resulted from 15 tons turning over on it as it hit the highway.'' He said: ''I don't know that all of it was caused by the trailer striking the highway when it rolled over, and I don't know that all of it wasn't, because I wasn't sitting there looking back when the car hit it.''

Appellant insists that whether the mark was caused by the impact with the automobile, or in striking the highway, was for the jury and that witness' answer that "it was made by something going in the opposite direction" was prejudicial. Appellant's theory apparently is that the damage was caused by contact with the pavement, when the trailer turned over, but no evidence was offered to that effect and one of defendants' witnesses was permitted to say "I can't conceive of a 15 ton truck turning over and having this kind of damage done under the conditions as they were that night."

In view of the above evidence, we are unable to see how plaintiff could have been prejudiced by the answer to the particular question. The photograph was in evidence. The mark and its characteristics clearly appear. The answer could have added little, if anything, to the facts disclosed by the photograph. The condition and appearance of the breaks in the uprights, the direction of the splinters, the displacement toward the rear of the trailer of a section of one broken upright so as to show nails bent backward from a dark place in line with another section of the same upright, all speak so eloquently that the answer of the witness could have added little, if anything, and could not have prejudiced the plaintiff.

Appellant further contends that "expert testimony should be received only where the subject matter is complicated and embraces matters not of common knowledge." [9 Blashfield's Cyclopedia of Automobile Law & Practice, sec. 6312, p. 577; Cole v. Empire Dist. Electric Co., 331 Mo. 824, 55 S. W. (2d) 434, 437; and Homan v. Missouri Pacific Railroad Co., 334 Mo. 61, 64 S. W. (2d) 617, 624, 625.] Appellant also cites, Clear v. Van Blarcum (Mo. App.), 241 S. W. 81, to the effect that a mere conclusion of a witness upon facts, the determination of which is wholly within the province of the jury, is incompetent and should not be received in evidence. Respondents rely on Clark v. Reising, 341 Mo. 282, 107 S. W. (2d) 33, 35; Silsby v. Hinchey (Mo. App.), 107 S. W. (2d) 812, 816. The evidence was not admitted on the theory that the witness was an expert, or that the detailed facts upon which the opinion was based could not be given to the jury. The testimony was not as to facts observed but as to a conclusion. No objection was ▮ made on the ground that the question called for a conclusion. No motion was made to strike the answer as a conclusion. We may concede that the evidence was not properly admissible, since it was a mere conclusion of the witness, and concerned a matter on which expert testimony was not admissible, but in view of all the other evidence in the case we are unable to see how the answer of the witness could have prejudiced the rights of plaintiff in any manner whatsoever. [See, Silsby v. Hinchey, supra.] The matter was presented to the trial court in plaintiff's motion for a new trial. Apparently the court considered the matter of no consequence and overruled the motion. We are prohibited from reversing

30

a judgment, unless we believe that the error was one "materially affecting the merits of the action." [Sec. 1228, R. S. 1939, Mo. Stat. Ann., p. 1352, sec. 1062.] We are satisfied that the error here complained of did not do so. The assignment is overruled.

The judgment is affirmed. *Hyde* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.