All concur.

**ALL PRODUCTS COMPANY, Inc.,
Plaintiff-Respondent,**

v.

**Richard CARNEY, d/b/a Peerless Products
Company, Defendant-Appellant.**

No. 24096.

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Motion for Rehearing and for Transfer to Supreme Court Denied June 7, 1965.

Application for Transfer Denied July 12, 1965.

Roy F. Carter, Kansas City, Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel, for appellant.

Frank P. Barker, Jr., Don M. Jackson, Kansas City, Jackson, Wade & Barker, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

Plaintiff, All Products Company, Inc., sued the defendant Richard Carney, d/b/a Peerless Products Company on an open account. Plaintiff had the verdict and judgment for $10,406.91 ($7,932.10 amount of the account and $2,474.81 interest from September 28, 1958—date of demand for payment). Defendant has appealed.

The occurrences leading to the present controversy started in 1958. At that time plaintiff corporation, located in Mineral Wells, Texas, was a manufacturing company producing steel and aluminum products, including farm gates and fencing. Defendant, operating as Peerless Products Company, 4319 Independence Avenue, Kansas City, Missouri, was in the "aluminum window and door business".

Shortly before March 28, 1958, plaintiff's salesman, Harold McClaine, (who testified by deposition since he was no longer an employee and resided in a different state) called upon defendant Carney at his place of business in Kansas City. All parties agree that McClaine first tried to promote a distributorship. This was not accomplished, but on March 28, 1958, McClaine wrote up and defendant Carney signed six purchase orders or invoices for plaintiff's products, primarily fence, f. o. b. Mineral Wells, Texas. The total selling price or cost price as noted on these invoices was $7,932.10. The invoices were written on plaintiff's forms and on at least some of them the price was stated to be 50 percent of the suggested retail price, with further discounts of 10 percent and 5 percent (presumably for prompt payment). In due time the merchandise described in the orders or invoices was shipped f. o. b. Mineral Wells, to defendant in Kansas City. Defendant received the shipment, paid the freighting costs and embarked upon an advertising and sales campaign. The material was exhibited at the Homes Show in Kansas City and for a few weeks at a Sears store. Defendant's organization was not very successful in marketing the merchandise although two sales were made and apparently completed.

At or near the middle of May, 1958, defendant Carney telephoned plaintiff's sales manager Charles Turner and explored the possibility of returning the merchandise. Carney said he was about to be hospitalized and this was one of the reasons he suggested to Turner for returning the fence. Under date of May 20, 1958, defendant wrote a letter to Mr. Turner which was received in evidence and therein he stated in part: "We ask that you discuss our problem with Mr. Kessler" (president of plaintiff company) "and advise us as soon as possible regarding Mr. Kessler's decision. It is our desire if at all possible, to return *to* stock to your company. We might add

that we were advised by Mr. McClaine when he was working up what we requested our minimum stocking inventory that should we at any time be overstocked on any panel such as color, size, etc. that this inventory could be transferred to one of your other outlets".

Under date of July 7, 1958, Mr. Turner replied by letter and stated: "On returning here this information was given to management and they have rendered a decision to accept return of the material with a 25% restocking charge f. o. b. Mineral Wells, Texas."

Defendant did not accept this offer but shortly thereafter did ship the material by motor freight to plaintiff at Mineral Wells. Plaintiff refused to accept the shipment and defendant finally directed the freighter to return the cargo to him in Kansas City. This was done. The freight charges were in excess of $1,000. Defendant paid the freight both ways and then stored the stock in Kansas City warehouses, where it now rests. Plaintiff demanded payment on September 30, 1958. There was no response.

Carl Kessler, president of All Products Company, testified that the materials described in the invoices were shipped to and received by defendant, that the prices listed on the invoices were only 50 percent of the suggested retail prices, and that the prices to defendant were fair and reasonable.

Mr. McClaine, the salesman who wrote up and received the order, did not remember all the details but testified definitely that he made no agreement or promise to defendant Carney or anyone else that plaintiff would take back the merchandise. For defendant, Harold Haub, an employee, testified, but he was not present when the order was written up and signed. Richard J. Lynch testified as to reasonable warehouse storage charges. Mr. Carney himself was defendant's only other witness. He admitted signing the order, receiving the shipment and paying the freight charges. He conceded that they advertised and tried to make sales, that he

called plaintiff's sales manager about taking the material back and mentioned his health as one of the reasons. He admitted writing the letter containing the phrase "It is our desire, if at all possible, to return stock to your company". Mr. Carney, however, insisted that McClaine said plaintiff would "take it off our hands if we did not sell it", "would transfer it to other places or take it back to the home office". He said he was not an agent selling for plaintiff but could sell the fence for whatever price he saw fit. He did not testify that the price charged was not fair and reasonable but said rather that he owed plaintiff nothing because they had agreed to "take it back". Defendant offered no testimony that the prices charged were unreasonable. Mr. Kessler was not even cross-examined relative to his statement that the prices were fair and reasonable.

There was some controversy during the trial and even in the argument before this court as to whether plaintiff's suit was founded upon a contract or on an open account. Plaintiff's petition sets forth the sales as shown by the invoices, alleges the prices "were and now are reasonable and proper", that defendant promised to pay and demand was made on September 30, 1958, but that defendant has "refused and failed to pay". The answer denied by paragraphical reference the allegations of plaintiff's petition and then set up a counterclaim. The special defense declared that plaintiff agreed that defendant "should have the option to return same * * * for full credit", said defendant incurred freight costs, warehouse and storage charges in the sum total of $2,225.76, and prayed for a finding that plaintiff take nothing and defendant have judgment on his counterclaim. The petition is clearly a suit on an open account. Plaintiff's counsel so stated in the oral argument here.

Although defendant's answer denies the allegations of plaintiff's petition, including the assertion that the charges "were reasonable and proper", the case was not tried on that issue. Defendant's contention that

plaintiff "agreed to accept said merchandise back for full credit if the same was not salable" was the sole issue actually contested during the trial. There was substantial evidence or testimony both ways on this point. The jury passed upon that question and by its verdict for plaintiff and against defendant's counterclaim, indicated that it was accepting plaintiff's version.

On appeal two assignments of error are made: (1) the giving of Instruction No. 1 and (2) the giving of Instruction No. 9. Instruction No. 9 is on the burden of proof relative to defendant's counterclaim. Appellant's main objection is to the last sentence which tells the jury it cannot find for defendant on the counterclaim "unless the agreement between the parties was for something other than an outright sale". We do not believe the complained about statement in this particular case is improper or that the giving of the instruction constitutes reversible error.

We set forth Instruction No. 1 in full:

### "INSTRUCTION NO. 1

"The Court instructs the jury that if you find and believe from the evidence that defendant purchased from plaintiff All Products Company the steel fencing mentioned in evidence according to the purchase order and invoices mentioned in evidence at the price and sum of $7,932.10, and if you further find from the evidence that plaintiff delivered said fencing to defendant in accordance with said purchase orders and invoices, and if you further find and believe from the evidence that defendant accepted delivery of said fencing, F.O.B. Mineral Wells, Texas, and refused to pay plaintiff in accordance with said purchase order and invoices, then your verdict shall be against the defendant and for the plaintiff on plaintiff's petition.

"You are further instructed that if you find for the plaintiff on his petition you may award plaintiff damages in the sum of $7,932.10 plus interest at the rate of 6% per annum since September 30, 1958."

■ Defendant says that if the suit is upon an open account, the instruction is incomplete and erroneous because it does not require the jury to find the sum of $7,932.10 "to be a fair and reasonable value or price of the fencing." Nor is the jury told if it finds for plaintiff to allow the "fair and reasonable value" of the merchandise. As a general proposition the criticism is well taken. In a suit on an open account it is incumbent on plaintiff to allege, prove and receive a fact finding, that the charges made and recovery received are "fair and reasonable". 1 C.J.S. Account, Action on, § 15, page 603. Plaintiff so alleged and produced evidence in conformity but its Instruction No. 1 does not squarely require such a jury finding. The instruction should have done so. We do not approve the instruction as drawn, without such requirement, as a good and proper instruction for use in an open account suit. However, we have concluded to affirm the judgment, in spite of the instruction, for the reasons presented immediately hereafter.

We have already stated and shown by a review of the evidence that only one issue was contested during the trial—namely did plaintiff agree to accept a return of the merchandise? Plaintiff alleged the prices charged were "reasonable and proper". The president of plaintiff company testified that these prices were "fair and reasonable". Defendant offered no evidence to the contrary and did not even question by cross-examination plaintiff's assertion in this respect. Defendant, during the trial conceded, insofar as concession can arise through nolo contendere, this particular element of plaintiff's case. Since defendant did not dispute, debate or refute this particular point, can it reasonably be said he was prejudiced on a point materially affecting the merits of the case, by the jury's action in accepting the adversary version or

even by the failure to require the jury to determine this particular issue specially?

It has long been the considered belief of the bench and bar that too many Missouri judgments have been reversed, or remanded, or both, because of technical defects in instructions. Our new simplified instructions effective January 1, 1965, were created, approved and adopted in the hope of improving this unhappy situation.

Section 512.160(2), V.A.M.S. provides:

"2. No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action."

In Banks v. Koogler, Mo., 291 S.W.2d 883, 891, a part of plaintiff's claim was for damages to his truck. The instruction did not require the jury to find that plaintiff was owner of the truck. We quote from the opinion:

"Defendant's next contention is that all of plaintiff's instructions were erroneous because they improperly assumed that plaintiff was the owner of the truck he was operating. Plaintiff testified that he had purchased the truck new and that he was the sole owner. There was no evidence to the contrary. The case was tried and submitted to the jury by both parties on the theory that plaintiff was the owner of the truck. Instructions should not assume controverted facts, George v. Allen, 362 Mo. 971, 245 S.W.2d 848, but there was no controversy in this case concerning the ownership of the truck, and it is not reversible error to assume in an instruction that which is conceded, undisputed or uncontradicted by the evidence. Morris v. Equitable Assur. Soc. of United States, 340 Mo. 709, 102 S.W.2d 569; Hill v. St. Louis Public Service Co., Mo.Sup., 64 S.W.2d 633."

We set forth the following from George v. Kansas City American Ass'n Baseball Co., Mo.App., 219 S.W. 134, 136:

"It is urged that plaintiff's instruction No. 2 is erroneous. This instruction is as follows:

'The court instructs the jury that the burden of proof is upon the defendant to prove that the contract introduced in evidence was canceled by the plaintiff.'

"The objection to this instruction is that it does not say that the burden was upon defendant to prove 'by the preponderance of the evidence,' etc. The instruction by using the words quoted, which defendant insists should have been used, would have, perhaps, been made clearer, but no case is cited by the defendant to sustain its claim that it was reversible error to exclude these words, and we are not prepared to say that it was such error."

The syllabus (12) in Fantin v. L. W. Hays, Inc., Mo., 242 S.W.2d 509, states:

"In motor vehicle collision case where plaintiff sought to recover under humanitarian doctrine, and court through inadvertence failed to submit instructions offered by both parties defining terms 'negligence' and 'highest degree of care', and terms were used in both parties' hypothesized instructions, the omission was not so erroneous as to compel granting of new trial in absence of showing of prejudice. RSMo 1949, § 512.160, subd. 2."

Judge Conkling, for the Supreme Court in Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 145, described the rule generally:

"In any event we are prohibited by statute to reverse the judgment unless

we believe that the above noted omission of instruction 1 was error, 'materially affecting the merits of the action.' Mo.R.S.A., Sec. 847.123, and Sec. 847.-140(b). We do not believe that omission did affect the merits of this case. Where, as here, there was no issue in the evidence respecting it, where the case was tried upon that theory and where defendant's brief so unequivocally and so many times concedes that fact, that such finding was omitted from the instruction could not possibly materially affect the merits of this case: The contention must be denied. Fenton v. Thompson, 352 Mo. 199, 176 S.W.2d 456. Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10."

■ It is our opinion that the defect in Instruction No. 1, that is failure to require a finding that the charges or allowances made by the jury, were "fair and reasonable", did not concern a contested or disputed issue. We do not believe that such defect resulted in prejudice to defendant on a point materially affecting the merits of his defense. There has been no showing of any such prejudice. That the trial court reached the same conclusion, seems to be indicated by its action in overruling the motion for new trial. Section 512.160(2) supra, forbids reversal of any judgment unless the appellate court believes that error was committed by the trial court against the appellant and *materially affecting the merits of the action.*

We find no reversible error. The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.