Mildred HOUSMAN, Respondent,

v.

Benjamin FIDDYMENT, Appellant.

No. 52185.

Supreme Court of Missouri,
En Banc.

Nov. 13, 1967.

Farrington & Curtis, Thomas Strong, Richard K. Wilson, Springfield, for plaintiff-respondent, Mildren Housman.

William H. Sanders, Dean F. Arnold, Kansas City, W. Ray Daniel, B. H. Clampett, Springfield, for defendant-appellant, Caldwell, Blackwell, Sanders & Matheny, Kansas City, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, of counsel.

HOUSER, Commissioner.

Mildred Housman brought an action for $50,000 damages for personal injuries against Benjamin Fiddyment, who filed a counterclaim for $27,500 for personal injuries and property damages, all arising out of a head-on collision of their automobiles on Highway U, an 18-foot blacktop road in Christian County. There was a jury verdict for plaintiff for $16,000 on the petition and for plaintiff on the counterclaim. Defendant has appealed from the ensuing judgment.

The only question of liability tried and submitted was the question as to which of the two vehicles was across the center and traveling on the wrong side of the roadway. Each party contended that he was in the right and that the other was in the wrong in this respect.

Plaintiff's evidence on liability consisted of the testimony of plaintiff; an expert witness named J. Stannard Baker; a traffic officer; a photographer and eighteen photographs, many of which were taken at the scene of the collision before the vehicles were moved.

Plaintiff testified that she was driving her 1951 Chevrolet sedan west at a speed of 25 m. p. h. or less "on the side of the road it belonged on," on "her" side of the road all of the time; that at no time did she let any part of her car get across the center of the road; that she was as close as she could get to the right-hand side of the road. Just before the collision she "had a bare glance" of an approaching vehicle coming "far too fast" down the hill in her lane right in front of her, coming straight at her on her side of the road. Almost instantaneously after she saw the oncoming car and before she could "think one thought" the collision occurred and her car was knocked "back down the hill and off the road." She did not remember whether she applied her brakes.

Defendant's evidence on liability consisted of his own testimony, a photographer, a passerby who testified as to some skid marks he saw at the scene, a photograph of plaintiff's vehicle and twenty-one photographs taken at the scene of the accident 12 or 13 days after the event. Defendant testified that he was driving his 1959 Chevrolet station wagon east at a speed of 52 or 53 m. p. h.; that he came down one hill and over another that turned slightly to his right; that he was going slightly downgrade when the collision occurred; that at all times his station wagon was on its own side of the road, with its right side "possibly two and a half, three foot from (his

right-hand) side of the road" and its left side within a foot or two of the center of the road. Asked on cross-examination whether he could have drifted over and across the center of the road as he came around the curve and down the hill with the wagon loaded with 1000–1200 pounds of equipment, defendant stated "I don't know whether I did for sure." Asked if just before the impact he was cutting his vehicle back to the right, he answered "That's right." He first saw the other car when the vehicles were two or three car lengths apart. The other car was then "possibly eighteen, twenty inches over the center," coming at a speed of 50 m. p. h. He did not know whether he had time to apply the brakes. He was rendered unconscious.

The only issue on this appeal is whether the court erred in admitting the opinion testimony of plaintiff's expert accidentologist or reconstructionist, Mr. Baker, "as to how, where and when the collision occurred."

J. Stannard Baker is Director of Research and Development at the Traffic Institute of Northwestern University. A traffic engineer, he directs the major part of the research and development work at the institute. Educated as an electrical engineer, he was on the staff of the National Safety Council 1928–1945 and director of safety for the transit lines in Detroit one year. He has been associated at times with the institute since its founding in 1936. For 30 years he has observed, supervised and studied crashes of motor vehicles under controlled conditions. He teaches traffic reconstruction. He has written texts, manuals, guides, articles and books by the hundreds in this field. He invented devices to calculate speed of vehicles from skid marks. He has testified approximately 200 times in court as an expert. He received various awards for distinguished service and research in highway safety. He is proficient in the science of photogrammetry (making maps from

photographs) and wrote a manual on the subject under a government grant.

His qualifications as an expert in the field of accident reconstruction are not challenged. On the contrary, defendant's counsel conceded in argument that he has a position of importance in the field of reconstructing accidents and referred to him as undoubtedly highly qualified. Nor are his conclusion and opinions challenged as far as accuracy and truth are concerned. The question is one of admissibility of expert testimony.

Mr. Baker was informed of the makes and models of the two vehicles involved and was given the directions and speeds of the vehicles testified to by their drivers. He examined all of the photographs taken by both parties, and made a visual inspection of the scene of the accident approximately ten months after the event. Based upon the foregoing and drawing upon his experience in the field of accident reconstruction, he was permitted to testify as follows: From the photographic evidence of damage, showing how the vehicles collapsed, he gave his opinion as to the relative positions of the two vehicles at the moment of initial impact and at the moment of maximum engagement and illustrated their positions with scale drawings, as follows:

Relative positions
at initial contact

Relative positions at
maximum engagement

Mr. Baker testified as to the direction of the forces exerted against the vehicles at maximum engagement. The forces against plaintiff's automobile were from the front and obliquely toward the left from the right. This caused her automobile to spin or rotate during the collision and until it came to rest. The forces against the station wagon were from the front but also from the left, back toward the center of the wagon. He placed arrows in the illustration, above left, to indicate the direction of the forces exerted on plaintiff's automobile. Knowing that plaintiff's automo-

bile rotated, and that defendant's station wagon did not rotate, and knowing the direction of the forces exerted against the vehicles, he could say approximately what relative positions the vehicles were in at their first contact.

Based upon the positions of the vehicles after they came to rest, and the principle of dynamics that the vehicle with the greater momentum will reverse the direction of movement of the vehicle with the lesser momentum and move it backwards in the direction from which it came, he concluded that the station wagon had considerably greater momentum and greater velocity or speed than plaintiff's automobile at the time of collision.

He explained how the rear ends of automobiles colliding tend to raise up, taking most of the weight off the rear wheels and greatly increasing the weight on the front wheels; that physical signs are often left on the surface of the road to indicate the area where the impact occurred and that typical signs are scrub marks of tires, made as a result of the unusual downward force on the front wheels during maximum engagement. He described a scrub mark in a bituminous road as a smearing of the bituminous material as a result of the application of heat, weight and friction; stated that a scrub mark is irregular in size, rather broad and dark, getting lighter as the car moves, with a bulge at one end. It tapers off as the force on the road diminishes and usually is not straight but slightly curved, varies in width and is generally oblique or diagonal to the road. Of the several black marks shown in the photographs he identified one of them as a scrub mark made during maximum impact of the vehicles and pointed out its characteristic qualities. It was his opinion that the scrub mark was made by the left front wheel of the station wagon, and not by any other wheel of the station wagon or by any wheel of plaintiff's automobile.

He explained why the debris was east of the point of maximum engagement, stating that debris, rust, road tar and mud, broken loose by shock, is moving and will continue to move in the direction in which the car is moving until it falls to the ground, in a trajectory; that when the forward movement of plaintiff's automobile was stopped by the superior force of the station wagon striking it, the debris in that split second did not have a chance to reach the ground before the automobile, then traveling backwards at a probable speed of 25 m. p. h., overtook the debris and batted it back. He explained that this phenomenon occurs in experimental crashes.

He expressed the opinion that during engagement plaintiff's automobile was traveling west nearly parallel with the road and that the station wagon was moving at an angle of 5 or 6° in a southeasterly direction. By photogrammetry he prepared an overlay to show the width of the road and its division into one-foot segments. Laid over the photograph depicting the portion of the road where the scrub mark appeared, the overlay demonstrated the center of the road (which did not have a painted center line). He testified that the overlay showed that the scrub mark started a foot and a half north of the center of the road; that the initial touching of the vehicles would be north of the scrub mark, and that the point of maximum engagement of the automobiles was approximately a foot and a half north of the center of the roadway. Plaintiff then sought to have the expert reconstruct to scale the position of the two vehicles with respect to the road at the time they came together, but the court refused to allow this on the ground that it would amount to asking him for "the ultimate conclusion in this case." He also identified another mark (which went to the side of the road on the right) as that made by the right rear wheel of the station wagon. He accounted for other tire marks appearing in the photographs, giving his reasons why they were not made by the vehicles involved. He found no physical evidence of braking on the part of either of the automobiles, and accounted mathe-

matically for their failure to apply brakes on the basis of the testimony that the vehicles were three car lengths apart when defendant first saw plaintiff's automobile, taken in connection with the testimony of the parties as to their respective speeds; that there was not sufficient time before collision to activate the brakes. Shown defendant's photographs taken 12 or 13 days after the accident, Mr. Baker excluded skid marks thereon as not having been made by plaintiff's automobile, for reasons explained by him, based upon the physical appearance and characteristics of the marks, their failure to connect up to the mark leading to the wheel of plaintiff's automobile, and for other reasons. The court refused to permit plaintiff to exhibit to the jury a scale map or plat prepared by the expert graphically showing the relative positions of the vehicles in various positions and the courses and directions they took at different stages from the moment of first contact until they came to a stop, for the assigned reason that this portrayal would usurp the function of the jury.

When jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid the courts out of necessity admit the testimony of experts in the field. Allowing an expert to give an opinion upon a subject of inquiry, instead of requiring that the witness give only *facts*, is an exception to the general rule that witnesses must state facts. "The exception is allowed from necessity." Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Mo.App., 317 S.W.2d 841, 851; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 606; Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S.W.2d 311, 322; Cole v. Empire District Electric Co., 331 Mo. 824, 55 S.W.2d 434, 438. The classic statement of the rule applied in determining whether expert testimony should be admitted in evidence (quoted in the above decisions) is that expressed in Benjamin v. Metropolitan St. Ry. Co., 133 Mo. 274, 34 S.W. 590, 593, more than 70 years ago: "It is the province of the jurors to draw all inference and conclusions from the evidence before them. The witnesses, as a general rule, must state facts, from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an intelligent opinion cannot be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule, and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The exception is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved."

In Homan v. Missouri Pac. R. Co., Mo. Sup., 334 Mo. 61, 64 S.W.2d 617, citing the Benjamin case, among others, this Court quoted with approval the following from 22 C.J. 639, § 733: "The necessity for such testimony arises where the subject matter of an inquiry is so far removed from the realm of common experience that the ordinary jury, even when the facts are fully placed before them, cannot fairly be expected to draw a correct inference therefrom, and at the same time no person competent to draw such an inference has personal knowledge of the facts."

The determination of the question of necessity rests in the first instance in the sound discretion of the trial judge and his discretion in this respect will not be set aside in the absence of a showing of an abuse of discretion. Yocum v. Kansas City Public Service Co., Mo.Sup., 349 S.W.2d 860, 864, and authorities cited.

The expert testified through 143 pages of the transcript on a wide variety of subjects. Applying the rule of *Benjamin* and *Homan* to these various subjects we are driven to

the conclusion that the trial court fell into error and must be found to have abused its discretion in its rulings as hereinafter discussed.

■ Particularly prejudicial was the expert's testimony that the point of maximum engagement was a foot and a half to the north of the center of the road, and that the left front wheel of the station wagon made the scrub mark, which was definitely located at a point a foot and a half to defendant's left of the center of the road. This was clearly the expression of an opinion as to the position of the station wagon immediately prior to the collision and as to the place of the point of impact. As such it was incompetent and inadmissible under the uniform rulings of the courts of of this state. Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617, cert. den. 291 U.S. 683, 54 S.Ct. 561, 78 L.Ed. 1070; Homan v. Missouri Pac. R. Co., 335 Mo. 30, 70 S.W.2d 869; Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10; Hamre v. Conger, 357 Mo. 497, 209 S. W.2d 242; Pulse v. Jones, Mo.Sup., 218 S. W.2d 553; Cox v. Wrinkle, Mo.Sup., 267 S. W.2d 648; Welch v. McNeely, Mo.Sup., 269 S.W.2d 871; Ryan v. Campbell "66" Express, Inc., Mo.Sup., 304 S.W.2d 825; Chester v. Shockley, Mo.Sup., 304 S.W.2d 831; Duncan v. Pinkston, Mo.Sup., 340 S.W.2d 753 [8]; Williams v. Cavender, Mo.Sup., 378 S.W.2d 537 [1]; Schneider v. Prentzler, Mo.Sup., 391 S.W.2d 307; Kratzer v. King, Mo.Sup., 401 S.W.2d 405 [7].

In *Hamre* this Court said, 209 S.W.2d, l.c. 249: "Whatever value the *location* of the debris or the *center* of the debris falling from two motor vehicles upon impact may have upon determining the point of impact is not, in our opinion, a proper subject for expert or opinion evidence. In this age of motor vehicles, knowledge upon such subject is not something not possessed by the ordinary person, hence the opinion evidence of Patrolman Harrison was incompetent, since it invaded the province of the jury." The error was held to be one of several justifying the order granting a new trial. In *Chester*, 304 S.W.2d, l.c., 834, we said: "We think it clear that the trial court erred in overruling the objections heretofore noted and in permitting the officer, who was not an eyewitness, to give his opinion or conclusion, from the facts learned in his investigation, as to the point of impact. In the case of Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, a highway patrolman who investigated the accident was permitted by the trial court, over objection, to state his opinion, based upon the location of debris that had fallen from the vehicles involved, as to the point of impact. Upon appeal this court held that such was not a proper subject for expert or opinion evidence, and hence the ruling which permitted the witness to give the challenged opinion was error. This court has adhered to that view since the adoption of the Hamre opinion. [Citing cases.]" In *Pulse* this Court agreed that if objection had been properly made to a diagram which indicated by arrows the line of movement and path of a car as having crossed the center line and having been on the wrong side at the time of the collision, and fixed the point of impact, and to the testimony of a highway patrolman that from his investigation the diagram showed where the cars were before the accident occurred, "its admission would have been reversible error." 218 S.W.2d, l.c. 556. In *Cox* this Court held that permitting a highway patrolman to state his opinion that the debris was at the probable point of impact or collision was "erroneous." In *Welch* it was ruled that an objection should have been sustained to a question asked a highway patrolman whether he was able to form an opinion as to "where the collision occurred." 269 S.W. 2d, l.c. 879 [24]. In *Ryan* we held that any conclusions or opinions contained in a highway patrol report made by an investigating officer "as to the point of impact would not have been admissible." 304 S.W.2d, l.c. 828 [3]. In *Duncan* we said: "A member of the Missouri Highway Patrol, not an eyewitness to the collision, was permitted to state his opinion based on the location

of debris that the point of impact was west of the center line of the highway in the southbound lane of travel. Such evidence has been held to be improper as not being a proper subject of expert or opinion evidence and as invading the province of the jury." 340 S.W.2d, l.c. 758 [8]. In *Schneider* it was said that the testimony of an investigating officer that it was his opinion that an area circled in red on a plat was the point of impact "would be an improper conclusion under Hamre v. Conger, * * *." 391 S.W.2d, l.c. 310[4]. In *Kratzer* we ruled the exclusion of the testimony of a highway patrolman that when the two cars collided they left debris at the point of collision not error as against an objection that "this is a subject of expert testimony," citing Hamre v. Conger for the rule that this is not a proper subject for expert or opinion evidence. 401 S.W.2d, l.c. 409 [7].

In *Cornwell, Pulse, Cox* and *Williams* the admission of the testimony did not effect a reversal for the reason that under the peculiar surrounding circumstances the improper testimony was not prejudicial, or because no proper objection was made, or for other technical reasons, but as indicated the principle was recognized. *Williams* specifically disclaimed any impairment of the views expressed in Hamre v. Conger and Duncan v. Pinkston.

■ Objections to the expert's testimony on this phase of the inquiry were properly and timely made. We are not persuaded that its improper admission was cumulative merely, or that it constituted harmless error, having in mind the impressive qualifications, nationwide recognition and prestige of Mr. Baker in his field, and the effective and convincing manner in which he explained his testimony. Although the jurors had

the right to disregard the expert's conclusions, a juror would have needed strong convictions indeed to pit his own opinions against those of this renowned and articulate expert. We think the error affected the verdict in this case.

Notwithstanding the foregoing cases [1] clearly indicate that opinion evidence as to the point of impact or collision is inadmissible in this state, respondent contends that they do not decide the questions presented on this appeal because these cases were "concerned with rather simple physical facts from which a jury could easily draw its own conclusions," whereas in the case at bar there are contradictory marks of various kinds and debris "which would, without expert assistance, leave the average juror in a state of complete confusion." Respondent leans heavily on Yocum v. Kansas City Public Service Co., Mo.Sup., 349 S.W.2d 860, and Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Mo. App., 317 S.W.2d 841.[2] *Hamre* and *Chester* are distinguished in *Yocum* on the basis that the facts in those cases "were such that a jury possessed of the knowledge of the ordinary man of that time could as well determine the 'point of impact' as any other person, however expert he might be." 349 S.W.2d, l.c. 864. *Chester* and its predecessors are distinguished in *Central* on the ground that the case there reviewed "involved technical mechanical knowledge" not possessed by ordinary jurors. In our judgment the rulings in *Yocum* and *Central* do not, under the facts of the case under review, open the way for the admission of Mr. Baker's testimony that the wagon was traveling on the north side of the roadway immediately prior to the collision, and fixing the point of impact north of the center of the roadway. These subjects do not involve an application of the principles

1. Many of which are cited in the annotation "Opinion Evidence—Point of Collision," 66 A.L.R.2d 1048.

2. Respondent also cites O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129, in which an expert witness testified to a wide

range of subjects. O'Neill is not authority for respondent's position, for no point was made in that case that the court erred in admitting the expert's testimony, and the court did not pass upon its *admissibility*.

of physics, engineering, mechanics or other technical fields of science requiring specialized information. These questions could be determined by jurors possessed of the knowledge of ordinary men of the time. Automobile collision cases involving these subjects of inquiry are routinely decided by Missouri juries without the aid of expert witnesses.

For the same reasons the court erred in admitting Mr. Baker's opinions on the following subjects: the positions of the vehicles with relation to each other and with relation to the roadway and the center thereof, at the time of collision; that there was no evidence of braking by either vehicle, and the expert's accounting for or exclusion of other marks on the roadway as unrelated to this collision. In this case the jury had the benefit of the testimony of the drivers of both vehicles, who testified at length. Numerous photographs clearly revealed the terrain, roadway and surroundings. Many of these were taken shortly after the collision while the vehicles were still in their respective positions at which they came to rest, the highway patrolman was still investigating and the station wagon was still burning. The photographs of the two vehicles were made from several different angles. They graphically illustrated the damage done to the vehicles, the overlap between the two cars and how the force of the impact was applied and how it affected the vehicles. Marks on the surface of the roadway and the debris were plainly visible.

There was no necessity of resorting to the specialized knowledge and experience possessed by an expert in order for the jury to have reached a reasonably accurate conclusion on the single issue presented in this case. In these modern days nearly all jurors are experienced motorists. Marks and debris on highways at the scenes of collisions, examples of the damage done when automobiles collide and the results of the interaction of vehicles colliding are matters of common observation. As a result the modern-day juror in the average case is "just as capable of reasoning backward from the evidence and making a correct analysis of what happened as is the expert." Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692. The marks, with the possible exception of the scrub mark, and the debris, were as susceptible to interpretation by the jury as by the expert. The raw physical facts were sufficiently self explanatory and related to the oral testimony that the average juror, on the basis of ordinary knowledge, common sense and practical experience gained in the common experiences of life, could reasonably be expected to draw correct inferences therefrom and determine with reasonable accuracy which vehicle was traveling on the wrong side of the road at time of impact. A comprehension of the above-mentioned subjects, under the circumstances of this submission, was within the competence of the average juror.

The ultimate issue for decision (which vehicle was traveling on the wrong side of the center of the roadway when the impact occurred) was a matter which, under the facts and circumstances in evidence, was within the ken and competence of the average juror and it was prejudicial error to admit the opinion of the expert, over the objection of the defendant, as to the point of impact; the positions of the vehicles with reference to the center of the roadway; that there was no evidence of braking and as to unrelated marks.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

HOLMAN, C. J., and HENLEY, EAGER, DONNELLY and STORCKMAN, JJ., concur.

SEILER, J., dissents and adopts as his dissenting opinion the Memorandum of WELBORN, C.

FINCH, J., dissents and concurs in dissenting opinion of SEILER, J.

## MEMORANDUM OF DISSENT

WELBORN, Commissioner (dissenting).

I must respectfully disagree with the opinion of HOUSER, C.

"The question of the qualification of a witness as an expert in the field concerning which his testimony is sought and *the necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision in those respects is not to be set aside in the absence of showing of an abuse of discretion.*" (emphasis supplied) Yocum v. Kansas City Public Service Company, Mo. Sup., 349 S.W.2d 860, 864 [1]. See also Jones v. Smith, Mo.Sup., 372 S.W.2d 71, 78 [11, 12]; Dillenschneider v. Campbell, Mo. App., 350 S.W.2d 260, 266 [10–12]; Edwards v. Rudowicz, Mo.App., 368 S.W.2d 503, 506–507 [4–7].

These cases recognize the necessity for flexibility in determining the admissibility of expert testimony. A wide range of discretion must be granted the trial judge in admitting or excluding such testimony. Appellant's counsel, at the trial, so acknowledged, stating: "Whether or not [the witness] testifies is solely up to Your Honor; it's purely discretionary as to whether his opinion would be beneficial to this jury; and if it is a situation where the jury needs the benefit of expert advice." Determination of whether or not the trial court has abused its discretion necessarily requires that the circumstances of the particular case be considered, as well as the qualification of the particular witness and the subject of his testimony. In this case, the proper determination requires consideration of more than the bare outline of the testimony of the plaintiff and of the defendant, followed by a consideration, in a vacuum, as it were, of the expert's testimony. At the time that the expert testimony was offered, plaintiff had testified that he was on the right side of the road at the time of the collision. Plaintiff's counsel had read from defendant's deposition the defendant's statement that he was

on his right side of the road at all times. Obviously, the crux of the case was to be, as it turned out to be, just which vehicle was where at the time of collision. Before the expert witness was offered, numerous photographs, offered by both parties, had been introduced into evidence. Some were taken at the scene of the collision shortly after it occurred, clearly showing the position of the cars as they had stopped following the collision. Other photographs introduced had been taken subsequently. The photographs revealed numerous tire marks on the pavement. Plaintiff was obviously more interested in certain of the marks. Defendant, on the other hand, tended to emphasize other markings appearing in the photographs. Clearly, just which of the markings appearing in the photographs were actually related to the collision would have a larger bearing upon the outcome of the case.

The situation was further complicated by the fact that the center of the roadway was unmarked. Each party may have honestly believed that he was on the proper side of the road. Obviously, at least one of them was mistaken. Furthermore, the opportunity of each driver to observe the other vehicle before the collision was extremely limited.

Such was the situation which the trial court had before it when Baker was offered as a witness. After the witness had been interrogated about his qualifications, there was no objection based upon the inadequacy of the witness's credentials to testify as an expert in the field of accident reconstruction. Appellant's general objection to his testimony was stated as follows: "I'm objecting to his testifying in the capacity as a reconstructionist and the direct basis for my objection is that the factual evidence, the demonstrable evidence in photographs, and the availability of * * * lay witnesses is sufficiently clear, and there is no need for expert testimony to assist this jury in analyzing any aspect of this factual situation, and that by so permitting this man to testify we are invading the province of the jury

in deciding the ultimate fact as to the position of these vehicles at the time of impact." This objection, overruled by the trial court, *was obviously without merit for at least two reasons.* In the first place, the sweeping exclusionary rule for which appellant contended was clearly contrary to numerous decisions of appellate courts in this state recognizing that there are certain well-recognized areas for expert testimony regarding the facts of an automobile collision. See Yocum v. Kansas City Public Service Company, Mo.Sup., 349 S.W.2d 860; Jones v. Smith, Mo.Sup., 372 S.W.2d 71; O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129; Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Mo.App., 317 S.W.2d 841. In the second place, the objection that the testimony would invade the province of the jury was not a valid objection. Numerous cases have so held. See State v. Paglino, Mo. Sup., 319 S.W.2d 613, 624 [13]; Mann v. Grim-Smith Hospital and Clinic, 347 Mo. 348, 147 S.W.2d 606, 608; Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Mo.App., 317 S.W.2d 841, 851.

Turning then to the specific matters which the opinion holds should have been excluded, the first is the position of the vehicles with relation to each other at the time of initial contact and at maximum engagement, the matters illustrated by the diagrams in the opinion. The witness first stated his opinion as to the relative location of the vehicles upon original contact. However, before the witness was permitted to express such an opinion, the trial court required him to state the basis for his opinion. The witness proceeded at length to state the matters which he had considered. They will not here be detailed, but, upon hearing them, the trial court was quite clearly warranted in concluding that the witness could properly express an opinion on the matter. In any event, the prejudice to appellant from the answer does not appear, inasmuch as defendant's statement from his deposition, previously read into evidence, was that he was swerving to his right at the time of the collision, which is what the witness concluded.

The next matter relates to the position of the two vehicles at the time of maximum impact. Again, the witness explained at length the factors upon which his opinion was based, which included fundamental laws of dynamics and detailed examination of the damage incurred as revealed by photographic evidence. The trial court was not required to reject the opinion finally given because it was based upon photographic evidence available to the jury and upon generally known principles of dynamics. The witness, by virtue of his training and experience, was in a position to relate the evidence of damage and the fundamental principles of dynamics, and thereby help the jury to understand what had occurred.

As for the testimony of the witness as to the position of the vehicles in relation to the roadway at the time of collision, the testimony to which appellant points as objectionable related to the direction of travel of the vehicles "while they were still engaged with each other, touching each other before they separated." The witness's testimony was that the plaintiff's sedan was traveling nearly parallel to the road in a westerly direction and the defendant's station wagon at an angle of five or six degrees in an easterly direction. No objection was made as to the adequacy of the basis for this conclusion. Appellant here does not attempt to demonstrate the prejudicial effect of this particular item of testimony, and, finally, it is, at least as to the direction of defendant's travel, consistent with defendant's statement that he was swerving to the right at the time of the collision. Insofar as the witness's statement in this regard is concerned, it was, at the most, merely cumulative.

The testimony that neither driver applied his brakes and that there was no evidence at the scene of braking by either vehicle is, likewise, merely cumulative and corroborative of the testimony of the drivers, neither of whom testified that the brakes were applied.

As for the testimony about the markings on the pavement, it is clear that not all could

have been connected with the collision. However, the photographic evidence was not so clear that the assistance of an expert in eliminating the marks not connected with the collision could not be said to have been helpful.

The opinion finds "particularly prejudicial" testimony as to the location of the point of maximum impact, and the testimony that the left front wheel of defendant's vehicle made the "scrub" mark, which was clearly in the plaintiff's lane of traffic. The opinion concludes that this testimony amounted to testimony as to the point of impact.

However, the opinion finds no fault with the witness's testimony concerning the cause, nature and characteristics of scrub marks, including the witness's conclusion that a scrub mark is the product of the maximum engagement of the vehicles. The witness's identification of a mark in the exhibits as a scrub mark is not questioned, nor is the witness's testimony on the location of the various marks, including the scrub mark as one and one-half feet on plaintiff's side of the road. This evidence, for all practical purposes, amounts to testimony by the witness as to the point of impact.

In any event, a rigid "no opinion testimony as to the point of impact" rule should not be applied. That rule had its origin in dictum in Hamre v. Conger, 209 S.W.2d 242. In that case, the court pointed out that there was no preliminary inquiry to determine the experience of the patrolman "to qualify him as an expert to determine the *point* of impact from the *location* of the debris." 209 S.W.2d 247. That was sufficient reason for the error in admitting his testimony. The remainder of the court's discussion of opinion evidence upon the point of impact was wholly dictum. However, the dictum by frequent repetition has now assumed the status of a rigid exclusionary rule quite inconsistent with the generally accepted principle that the admission of expert testimony is primarily a discretionary matter in the particular case. It is also to be noted that the court ultimately concluded in Hamre that the opinion evidence was inadmissible "since it invaded the province of the jury." 209 S.W.2d 249. If, as the cases above cited hold, that is an unsound ground of objection to the admission of opinion evidence, it is an equally unsound basis for a judicial opinion.

To my mind, the trial court, in the circumstances of this case, properly concluded that the evidence which the opinion of Judge Houser holds was erroneously admitted was necessary to permit the jury to arrive at the facts upon which their ultimate judgment must rest. Automobile accidents may be matters of common occurrence these days, but that does not mean that ordinary jurors are so familiar with their characteristics and consequences that trained experts, applying laws of physics or dynamics, cannot point out a wide variety of factors which the untrained observer does not see or consider. Given a properly trained expert who is able to exhibit a sound basis for his opinions, a trial court, in a given case, should not be precluded from exercising its judgment and discretion in allowing the jury the benefit of such assistance.

There is a wide range of respectable authority which would support the admission of the evidence here. See: Miller v. Pillsbury Company, 33 Ill.2d 514, 211 N.E.2d 733; Dudek v. Popp, 373 Mich. 300, 129 N.W.2d 393; Frank's Plastering Company v. Koenig, 8th Cir., 341 F.2d 257; Moss v. Associated Transport, Inc., D.C., Tenn., 33 F.R.D. 335; Annotation, "Admissibility of opinion or evidence as to point of impact or collision in motor vehicle accident case," 66 A.L.R.2d 1048.

In my opinion, the trial court did not err and the judgment should be affirmed.